CRAWFORD COUNTY, a municipal corporation, Appellant,

v.

AFSCME DISTRICT COUNCIL 85 LOCAL UNION NO. 2643.

Commonwealth Court of Pennsylvania.

Argued Nov. 21, 1996.

Decided May 6, 1997.

Reargument Denied June 19, 1997.

Robert E. Durrant, Pittsburgh, for appellant.

Amy L. Rosenberger, Philadelphia, for appellee.

Before McGINLEY and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

The above-captioned appeal was instituted by Crawford County (County).[1] The County appeals from an order of the Court of Common Pleas of Crawford County (trial court) dismissing its petition to vacate the arbitration award of Arbitrator Bernard S. Fabian (Arbitrator) interpreting the collective bargaining agreement (Agreement) between the County and the American Federation of State County and Municipal Employees, AFL–CIO, District Council 85, Local Union No. 2643 (Union), which is governed by the Public Employe Relations Act (Act).[2] We reverse.

The Warden of the Crawford County Prison, by letter dated December 22, 1994, discharged Corrections Sergeant Arthur Pringle (Pringle) for consistently failing to conduct strip searches on inmates returning from work release, for ordering lower-level guards not to conduct these searches, and for taking gratuities from inmates. The other guards, who were also involved, were only reprimanded. The Union, of which Pringle is a member, is certified by the Pennsylvania Labor Relations Board as the exclusive bargaining representative for the guards at the Crawford County Prison. The Agreement in question was effective from January 1, 1992 to December 31, 1994.

On December 28, 1994, the Union grieved Pringle's discharge asserting that the discharge lacked "just cause" as required by the Agreement. The County denied the grievance and the Union appealed the matter to arbitration. The Agreement provides that the Union will notify Employer of issues to be addressed at arbitration. The Union framed the issue for arbitration to be whether Pringle was discharged for "just cause." In determining "just cause," the Arbitrator evaluated whether Pringle's discharge constituted disparate treatment in comparison to the other guards, who were merely reprimanded for the same conduct. After concluding that Pringle was disciplined more

---

1. Although the caption refers to Crawford County as a municipal corporation, the County appears to be mistaken about its status as a governmental entity. Crawford County is a county of the Sixth class under the County Code which defines such a county as one having a population between 45,000 and 95,000. 16 P.S. § 210(6). Crawford County has a population of approximately 86,196. 112 Pa. Manual 6–22 (1995). Our Supreme Court has emphatically stated that counties are political subdivisions of the Commonwealth and not municipal corporations. *Hartness v. Allegheny County*, 349 Pa. 248, 251, 37 A.2d 18, 19 (1944). Additionally, under the

Statutory Construction Act of 1972, the use of the term "municipal corporation" in any statute does not include counties. 1 Pa.C.S. § 1991.

The County's error is not, however, fatal to the filing of this appeal because the court has taken judicial notice of the County's true status and will consider the incorrect appellation as mere surplusage.

2. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301. This legislation is commonly known as "Act 195."

severely than others who engaged in the same conduct, the Arbitrator modified the discharge to a nine-month suspension without pay and ordered Pringle's immediate reinstatement without any loss of seniority.

On appeal, the County asserts that the trial court erred in sustaining the grievance arbitration award (1) because the issue of disparate treatment, as a mitigating factor, was outside the jurisdiction of the Arbitrator under the terms of the Agreement; (2) because the award did not draw its essence from the Agreement; (3) because the trial court applied the incorrect case law and standards to the instant case; and (4) because the trial court ruled that the Arbitrator's imprecisely drafted arbitration opinion prevented proper judicial review of the arbitration award. Before addressing these issues, however, we must first articulate the appropriate standard of judicial review to determine the depth to which we may proceed in examining the arbitration award.

Section 301(1) of the Act includes the Crawford County Prison which, as a political subdivision of the Commonwealth, is a public employer for purposes of the Act. Also, corrections officers have been held to be Act 195 employees. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 129 Pa.Cmwlth. 392, 565 A.2d 1232, 1234 (1989).

■ Although there has been much confusion in the past, the law is now well-settled in the Commonwealth that the standard of judicial review of grievance arbitration awards under the Act is the "essence test." In the seminal case of *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), our Supreme Court held that the standard of review which is provided in the Arbitration Act of 1927[3] applies to arbitration awards under the Act. *Id.* at 587–94, 375 A.2d at 1274–76. Subsequently, in *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988), our Su-

preme Court stated that "[a]lthough the Arbitration Act of 1927 was superseded in 1980, subsequent to the [*Beaver*] case, the statute's provisions relative to judicial review of arbitral awards were retained in the superseding legislation, the present Uniform Arbitration Act.[4] In *Beaver*, our Supreme Court adopted the reasoning of the United States Supreme Court in *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), where the nation's highest Court reasoned that " '[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' " *Id.* at 586, 375 A.2d at 1272. The *Beaver* Court, however, specifically noted that the United States Supreme Court, in *Enterprise Wheel and Car*, added the following:

> "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

*Id.* From this premise, the *Beaver* Court added the following:

> "[W]here a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the

---

**3.** Act of April 25, 1927, *as amended,* 5 P.S. §§ 161–181.

**4.** 42 Pa.C.S. §§ 7301–7362.

agreement, viewed in light of its language, its context, and any other indicia of the parties' intention....'"

*Id.* at 593–94, 375 A.2d at 1275.

■ Clearly, our Supreme Court has ordered the courts of the Commonwealth to uphold arbitrators' decisions as long as those decisions are reasonable and based on the collective bargaining agreement. We have previously held that "where an arbitrator's interpretation of a collective bargaining agreement can be in any way rationally derived from that agreement, the arbitrator's decision draws its essence from the agreement and shall not be disturbed by a reviewing court." *Lehigh County Community College Faculty Association v. Lehigh County Community College,* 653 A.2d 47, 48 (Pa. Cmwlth.1990). Because an arbitrator's interpretation of a collective bargaining agreement is a finding of fact, the degree of judicial scrutiny of arbitration awards is akin to the standard for considering a motion for judgment n.o.v. *Beaver,* 473 Pa. at 593, 375 A.2d at 1275. This means that a court can only reverse an arbitrator if, after viewing all the evidence, and reasonable inferences drawn therefrom, in the light most favorable to the prevailing party, there is insufficient evidence to support the elements of the claim or defense as a matter of law. *Id.* at 589, 375 A.2d at 1273.

■ The "essence test" limits judicial review of arbitration awards governed by the Act to further the Commonwealth's policy favoring arbitration as a dispute resolution mechanism in labor relations and results in judicial deference as a general rule. However, in a line of cases since *Beaver,* our Supreme Court has held that arbitration awards that are "manifestly unreasonable" are invalid. In these cases, our Supreme Court reversed arbitration awards under the "essence test" because they were not derived from the four corners of the collective bargaining agreement and amounted to the arbitrator's "own brand of industrial justice."

In *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983), a security officer for one of the housing projects under the control of the Philadelphia Housing Authority (Authority) defrauded an elderly tenant of $900.00. The Authority discharged the security officer, but an arbitrator reinstated him. The agreement provided that the Authority may take whatever disciplinary action for "just cause" that it deems appropriate. Noting that a reasonable interpretation of a collective bargaining agreement will be upheld, our Supreme Court held that "it [was] manifestly unreasonable to conclude that the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security force by discharging an officer who has defrauded one of the very people whom he is paid to protect." *Id.* at 216, 455 A.2d at 627. The *Philadelphia Housing Authority* Court held that, once the arbitrator found that the security officer defrauded an elderly tenant and then lied about his conduct, he was without authority to overturn the discharge. *Id.* Moreover, the reinstatement of the security officer "was unjustified by any terms that were or could properly have been contemplated by the parties." *Id.*

In *Musser,* 519 Pa. at 380, 548 A.2d at 1194, two corrections officers at a county prison teamed up with an inmate and subjected another inmate to three consecutive days of highly intrusive and humiliating abuse four days prior to the expiration of the abused inmate's incarceration. After an investigation, the two guards were discharged, but the arbitrator changed the discharge to a four-week suspension. On appeal from the arbitrator's award, the trial court reversed, and both this court and our Supreme Court subsequently affirmed.

In *Musser,* our Supreme Court examined the terms of the collective bargaining agreement which contained a management rights clause stating that "[t]he County shall have the right to discipline employees, including the right to suspend, lay off, demote and/or discharge employees for just cause." The agreement also stated that if an employee's grievance proceeds before an arbitrator, "the

sole question to be decided by such arbitrator shall be a question of fact as to whether or not such employee was discharged for just cause." *Id.* at 386, 548 A.2d at 1196. There was no dispute as to whether the guards committed the deeds against the inmate. The issue was whether the conduct amounted to just cause for the discharge.

The *Musser* Court stated that the collective bargaining agreement restricted the arbitrator to deciding "whether or not the requisite factual predicate exists for the imposition of discipline, and whether the disciplinary measure selected by the employer is in accordance with the terms of the Agreement." *Id.* at 394, 548 A.2d at 1201. Once just cause is determined, the sanction selected by the employer is beyond modification. Moreover, the Court stated that, because the arbitrator modified the discipline to a suspension, he impliedly found just cause for some type of discipline. *Id.* at 395, 548 A.2d at 1201. After finding just cause for discipline, the arbitrator in *Musser* went beyond the jurisdiction conferred upon him by the agreement when he modified the guards' dismissal. *Id.* The *Musser* Court emphasized that:

> the Prison Board of Centre County is exclusively vested with the governance and management of the county prison, and with the safe-keeping of inmates. If the Board is to carry out its duty relating to the safe-keeping of prisoners, the Board must have the unfettered power to discharge an employee who is found to have subjected an inmate to physical abuse.

*Id.* at 396, 548 A.2d at 1201.

In *Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989), the manager of a *Liquor Control* Board (LCB) store was suspended for falsifying store records and misappropriating money. During his suspension, the employee was hospitalized for severe psychological problems. After the union failed to submit requested verification to the LCB of the employee's psychiatric treatment, the employee was discharged, and the union grieved

his dismissal. The agreement provided that the LCB shall not discharge employees or otherwise discipline them without "just cause." The *Independent State Stores* Court observed that, although just cause was not defined in the agreement, the LCB published work rules and regulations which listed offenses that could result in disciplinary action against employees, and the grievant should have known the content of these rules. These rules were not expressly incorporated into the agreement by reference. Although the arbitrator found that the employee committed the acts for which he was discharged, he sustained the grievance because the employee's misdeeds resulted from his mental illness and concluded that the LCB did not have just cause to discharge the employee.

The *Independent State Stores* Court observed that the arbitrator erroneously focused on the severity of the punishment when the issue presented to the arbitrator was whether the LCB had just cause for discharging the grievant. The Court stated that:

> Once it is established that the record reflects that there was just cause for the action taken, the inquiry must close and the action of the agency must be accepted. Thus, if just cause for the action was present, any further effort on the part of the arbitrator to disturb the agency's action can not be said to flow from the essence of the bargaining agreement nor can it in any rational way be derived from that agreement.

*Id.* at 273–74, 553 A.2d at 952. Expanding the rule pronounced in *Philadelphia Housing Authority,* the Court in *Independent State Stores* added the following:

> It would also be 'manifestly unreasonable' to conclude that any agency of this Commonwealth, regardless of whether it is acting in a governmental or proprietary function, intended to bargain away its responsibility to ensure the financial integrity of its operation by discharging an employee who has misappropriated funds and falsified records.

*Id.* at 276, 553 A.2d at 953. The Court further stated that even if the LCB agreement expressly excluded the conduct of the grievant, its validity would be questionable. Although an arbitrator has the authority to discern the intent of the parties, "[i]t would be destructive to permit an arbitrator to design provisions ... beyond the bargaining process and without the [LCB] having the opportunity of discharging its fundamental responsibility to protect the integrity of its operation." *Id.* at 277, 553 A.2d at 953. In reversing the arbitrator's reinstatement of the employee, the *Independent State Stores* Court stated that "a governmental agency does not have the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function. *Id.* at 277–78, 553 A.2d at 954.

In *Lehigh County Community College Faculty Association v. Lehigh County Community College*, 653 A.2d 47 (Pa.Cmwlth. 1990), a faculty member wrote a letter declining an invitation to a board meeting and included in the letter criticisms of the college, one of its deans, and one of its programs. The college suspended her for ten days without pay and the arbitrator reduced the suspension to one day. Relying on *Philadelphia Housing Authority, Independent State Stores, Musser,* and the terms of the agreement, we reversed the arbitration award and held that once the arbitrator found just cause for suspension, the arbitrator was without power to modify the degree of disciplinary action taken. *Id.* at 49.

 The above-mentioned cases collectively provide a common denominator which delineates the characteristics of a "manifestly unreasonable" arbitration award under the "essence test." The arbitrator has factfinding authority which includes discerning the intent of the parties to a collective bargaining agreement. *Beaver,* 473 Pa. at 591–94, 375 A.2d at 1274–75. In this regard, the "essence test" is the appropriate standard of review for grievance arbitration awards governed by the Act. *Musser,* 519 Pa. at 390–91, 548 A.2d at 1199. Under the "essence test," the collective bargaining agreement

controls, and an arbitration award must not be disturbed if it, in any way, is derived from the collective bargaining agreement. *Lehigh County,* 653 A.2d at 48. A "manifestly unreasonable" award does not derive its essence from the collective bargaining agreement and therefore must be reversed because the arbitrator has exceeded his authority and gone beyond the confines of the collective bargaining agreement. *Philadelphia Housing Authority,* 500 Pa. at 216, 455 A.2d at 627.

 An arbitrator, as the factfinder interpreting a collective bargaining agreement, must look to the agreement for an expression or list of conduct which will constitute just cause. When the public employer has published work rules or regulations that delineate expected conduct, of which an employee should have known, these rules will become part of the definition of just cause whether or not they are expressly incorporated into the collective bargaining agreement by reference. *Independent State Stores,* 520 Pa. at 270, 553 A.2d at 950.

 When the language of the collective bargaining agreement does not define just cause and there are no published work rules or regulations, *Philadelphia Housing Authority* and its progeny supply a narrow definition of conduct constituting just cause that will be implied in every agreement controlled by the Act, to be invoked in limited circumstances. The definition is that, when an employee's conduct threatens the integrity of his public employer's absolute public duty and responsibility, just cause will be found for disciplinary action enabling the public employer to ensure that its operations and its public duty are not compromised. *Philadelphia Housing Authority,* 500 Pa. at 216, 455 A.2d at 627; *Independent State Stores,* 520 Pa. at 277, 553 A.2d at 953–54. Given a provision in the collective bargaining agreement that provides for managerial prerogative in disciplining employees, the degree of discipline imposed by the public employer cannot be overturned by the arbitrator, once the arbitrator expressly or impliedly finds

just cause. *Musser*, 519 Pa. at 395, 548 A.2d at 1201.

Normally, when the collective bargaining agreement fails to define the meaning of just cause, the arbitrator has the authority to interpret the meaning of the just cause provision as part of his fact finding function of determining the intent of the parties. *McKeesport Area School District v. McKeesport School Service Personnel Association (PSSPA/PSEA)*, 137 Pa.Cmwlth.28, 585 A.2d 544 (1990). Absent a more precise or comprehensive definition of just cause in the agreement or work rules that would apply to the conduct in question, arbitrators are instructed to find just cause when the integrity of the employer's operations are affected because the employee's conduct toward the very people that the public employer has an absolute duty to serve or protect is criminal in nature, *Philadelphia Housing Authority*, 500 Pa. at 216, 455 A.2d at 626–27, or exposes those individuals to physical harm, *Musser*, 519 Pa. at 396, 548 A.2d at 1202. Just cause should also be found when an employee's conduct subjects the public employer to financial harm when the employer is statutorily authorized to act in a proprietary manner, *Independent State Stores*, 520 Pa. at 277–78, 553 A.2d at 953–54, or when such conduct exposed the public employer to civil liability because claims for monetary damages could also destroy the integrity of the employer's operations and affect its ability to discharge its statutory function.

A finding of just cause in the situation when the employee's conduct compromises the integrity of the public employer's operations, absent an express indication in the agreement, or a published list of work rules defining standards of conduct, depends on the nature of the employer's duty and responsibility. A prison or a public hospital has a duty to protect the people confined and admitted to the employer's exclusive care. These people, whether confined voluntarily or involuntarily, are completely dependent on the expertise of the employer and the integrity of its operations. In such situations, an employer can discharge an employee for just cause when the misconduct affects the health, safety, or well-being of inmates, patients, or employees and amounts to less than criminal behavior because the integrity of the employer's operations can still be compromised and the discharge of the public employer's statutory function can be frustrated.

In the case *sub judice*, the County argues on appeal that the Arbitrator's award which modified the County's discharge of Pringle to a reinstatement with a nine-month suspension without pay does not derive its essence from the Agreement. The County maintains that the Arbitrator went beyond his jurisdiction by considering the issue of disparate treatment once he found just cause. In addressing the County's argument, we are required to examine the terms of the Agreement. *Musser*, 519 Pa. at 393, 548 A.2d at 1200.

Article V of the Agreement in the instant matter provides, in clauses similar to those at issue in *Musser*, that "[m]atters of inherent managerial policy are reserved exclusively to the Employer. These include but shall not be limited to such areas of discretion or policy as follows ... [t]o suspend, demote, discharge and take other disciplinary action against Employee for just cause." Article XVI further provides that "[t]he Employer shall not demote, suspend, or discharge an Employee without just cause." Finally, Article XVIII provides that "[t]he arbitrator shall not have the power or authority to add to, subtract from, or modify the provisions of this Agreement in arriving at a decision of the issue(s) presented and shall confine his decision solely to the application and interpretation of this Agreement."

The Union argues that the Arbitrator's reduction of Pringle's disciplinary sanction from a discharge to a nine-month suspension without pay was reasonably derived from the Agreement because the issue before him was whether just cause existed for the discharge of Pringle. The Union maintains that, under *McKeesport*, 585 A.2d at 546, the Arbitrator

had the authority to determine "just cause" based on his interpretation of the intent of the parties because "just cause" was not defined in the Agreement. The Union maintains that once the Arbitrator determined what the parties intended to constitute just cause and found that just cause did not exist specifically for the discharge, he had the authority to fashion a remedy for Pringle's conduct. We disagree for several reasons.

By awarding a nine-month suspension, the Arbitrator implicitly found the existence of just cause for some type of disciplinary action against Pringle. *Musser,* 519 Pa. at 395, 548 A.2d at 1201. Under the terms of the Agreement, the County and the Union manifested an intent to give the County sole discretion regarding the level of discipline imposed upon a wayward employee when just cause exists. Therefore, under the Agreement applicable to the instant matter and the ruling in *Musser,* the Arbitrator had to accept the County's decision to discharge Pringle once he found "just cause" for some type of disciplinary action. *Id.* The Arbitrator's modification of Pringle's dismissal, which was based upon the nature of Pringle's conduct and the County's alleged disparate treatment of Pringle, with respect to the other guards who failed to perform strip searches, was beyond the Arbitrator's jurisdiction. Once the Arbitrator found "just cause," the inquiry had to end and the disciplinary action of the County had to be accepted. *Independent State Stores,* 520 Pa. at 273–74, 553 A.2d at 952. Modifying that decision was beyond the boundaries of the Agreement and, therefore, beyond the boundaries of the authority given the Arbitrator.

■ Additionally, although the Agreement itself does not specifically define just cause, the Warden's office published a comprehensive list of work rules requiring strict compliance with the rules and state regulations. The teaching of *Independent State Stores* is that the violation of work rules published by the employer, of which the em-

ployee should have known, that define the responsibilities and the standards of conduct for employees, will provide a basis for just cause whether or not expressly incorporated by reference into the agreement. The Department of Corrections (Department) has promulgated regulations,[5] as did the LCB in *Independent State Stores,* that address the conduct and expectations of corrections officers in county jails.

Pringle signed a copy of the Crawford County Jail rules and regulations indicating that he read and understood them. Rule No. 17 states that "[v]iolations of the Rules and Regulations of the Crawford County Jail *shall be cause for immediate dismissal."* (emphasis added). Rule No. 3 states that each corrections officer shall remain impartial toward the inmates at all times. Rule No. 7 further states that corrections officers shall "eliminate conditions which could lead to difficulty and breach in security and safety." Rule No. 8 states that "[n]o personal dealings with a prisoner will be permitted. No unauthorized messages will be transmitted, favors performed or private matters transacted with any prisoners."

Additionally, the Department has promulgated minimum rules and regulations applicable to county jails. 37 Pa.Code § 95.224(a). The regulations provide that "[i]f trustees leave the jail premises for any reason they shall be *thoroughly* searched upon their return." 37 Pa.Code § 95.241(a)(1)(viii) (emphasis added). These regulations further provide that [p]risoners permitted to leave the jail under a work program ... shall be searched before reentering the jail. 37 Pa.Code § 95.241(a)(4)(iv).

Pringle achieved a score of 100% on the "Search Seminar Test" which was administered by the prison. On this examination, questions one through five all pertain to the mandatory requirement for strip searches. Pringle was obviously aware that the prison had strict rules requiring strip searches and that the published regulations by the Department, which require *thorough* searches, was

---

5. 37 Pa.Code §§ 95.221–95.248.

interpreted by the prison as requiring strip searches. In this regard, the prison rules and the Department's regulations provide ample notice and expressly provide just cause for "immediate dismissal."

Pringle deliberately failed to perform strip searches, prevented others from performing such searches, and received gratuities from inmates, thereby violating the express rules of the Crawford County Prison and the Department's regulations. Additionally, Pringle had actual knowledge of these mandatory requirements because he scored very well on an examination that tested his knowledge of those very rules. Therefore, "just cause" for discharging Pringle was present, and the modification of the County's dismissal of Pringle was "manifestly unreasonable."

 Finally, Pringle's conduct constituted just cause for dismissal because it falls within the narrow definition of just cause that is implied in every public employer bargaining agreement. The Prison Board of Crawford County is statutorily charged with the duty and responsibility of managing the prison and providing for the well-being of inmates.[6] When Pringle failed to conduct strip searches and ordered other guards not to conduct strip searches as required by the prison work rules, he risked the health, safety, and welfare of all the other inmates, whom the prison board had a statutory duty to protect, as well as his fellow employees. Inmates returning from work-release could have been smuggling weapons, or contraband into the prison. Given the propensities of prison inmates, prisoners and guards could have been greatly injured by such weapons or contraband which also would have exposed the County to civil liability. Additionally, Pringle's conduct exposed other prison officials to a similar risk of harm.

The County did not bargain away its inherent managerial power to discharge employees who pose a threat to the very safety of the inmates for which the prison is exclusively responsible, thereby compromising the integrity of its operations. Under the terms of the Agreement and the facts of the instant case, the arbitrator was required to find that there was just cause for the discharge and his failure to do so was manifestly unreasonable.

Accordingly, the order of the trial court is reversed.[7]

## ORDER

AND NOW, this 6th day of May, 1997, the order of the Court of Common Pleas of Crawford County, at A.D. NO.1995–1108, dated March 18, 1996, is hereby reversed.

---

6. Section 1 of the Act of May 16, 1921, P.L. 579, *as amended,* 61 P.S. § 408. This section provides that in the prison board, and officers appointed by it, for a county jail in counties of the third, fourth, and fifth classes, "the safe-keeping, discipline, and employment of prisoners, and the government management of said institution, shall be exclusively vested." *Id.*

7. Because we reverse the trial court and the County's third issue is answered by this opinion, we need not directly address the County's remaining issues.