GREENE COUNTY and Greene
County Children and
Youth Services,

v.

DISTRICT 2, UNITED MINE WORK-
ERS OF AMERICA and Local Union
9999, United Mine Workers of Amer-
ica, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 7, 2001.
Decided June 13, 2001.

**1260**

Michael J. Healey, Pittsburgh, for appellant.

Ronald J. Zera, Greensburg, for appellees.

Before COLINS, Judge, PELLEGRINI, Judge (P.), and RODGERS, Senior Judge.

COLINS, Judge.

This matter is before us on remand from the Pennsylvania Supreme Court for reconsideration in light of its decision in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). Based in large part on our decision in *Crawford County v. AFSCME District Council*, 693 A.2d 1385 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 550 Pa. 693, 704 A.2d 1383 (1997), we originally held that once the grievant was found to have committed the acts charged, it was manifestly unreasonable for the arbitrator to have modified the discipline and that such modification did not draw its essence from the CBA. *Greene County v. District 2, United Mine Workers of America*, 736 A.2d 52 (Pa.Cmwlth.1999), *vacated and remanded*, 563 Pa. 479, 761 A.2d 1180 (2000).

In December 1997, Greene County Children and Youth Services (CYS) discharged caseworker Christopher McKenzie after suspending him on charges of failure to maintain case files in a current and organized manner, one instance of failure to report to work or use call-off procedures, failure to follow instructions and disregard for supervisory authority, failure to respond to emergency intake and follow correct procedures, and repeated failure to complete required paperwork within 60 days. CYS produced memos documenting incomplete case files in 1995 and 1996, and for 1996, a warning for misuse of sick time, reprimand for exceeding the statutory time limit for investigating child abuse, memo for files out of compliance leading to a December 1996 suspension for failure to complete work in a timely fashion, negligence, and lack of job performance in chronological order. A March 1997 memo acknowledged McKenzie's having updated his files, but the files were again delinquent by May 1997. By July 1997, McKenzie received a memo about nine files that were out of compliance and two cases for which there were no files. An August 1997 charge of striking a child warranted a suspension, which was later converted to a warning. In one instance, McKenzie's failure to keep accurate files resulted in another caseworker's being unprepared for a court appearance. In September 1997 CYS documented incidents that occurred when McKenzie worked "intake," and a memo advised him that four-

teen files were out of compliance. CYS suspended McKenzie in November 1997 pending discharge, and after a hearing, CYS sent McKenzie a notice of termination. Thereafter, CYS discovered 18 intake files, dating to 1993, in McKenzie's desk for which no disposition had been made.

McKenzie filed a grievance with his bargaining representative, United Mine Workers of America, Local 9999 (Union), which had entered into a collective bargaining agreement with CYS in April 1997. The dispute proceeded to arbitration, and despite having found that McKenzie had failed to maintain his case files in a current and organized manner as charged, the arbitrator cited mitigating factors and modified McKenzie's penalty from a discharge to a suspension. CYS appealed the arbitrator's decision to the Court of Common Pleas of Greene County, and the parties filed cross-motions for summary judgment.

The trial court granted CYS's motion and reinstated the discharge. Based in large part on our decision in *Crawford County*, the trial court reasoned that maintaining case files is so essential to a caseworker's job that the arbitrator should have upheld the discharge upon finding that McKenzie did in fact fail to maintain his files, and that it was manifestly unreasonable for the arbitrator to consider mitigating factors to modify the discharge.

In his opinion, the trial judge reviewed the detailed regulations issued by the Department of Public Welfare to govern the operations of county children and youth services agencies, regulations that include detailed requirements as to what information case records and family service plans must include and that often set time limits on documentation. The trial court observed,

Plainly record keeping is extremely important to the operation of a county Children and Youth Services Agency. All government agencies create voluminous records, but few receive such detailed instructions concerning the compilation of those records. The reason is obvious: a child's situation can be so fluid and dynamic that his records must be current, extensive and available to various interested parties.... Considering that an emergency can arise at any time when any caseworker could be out of the office, or on vacation, or on sick leave, the most important resource available to the caseworker's supervisor or a replacement caseworker is the case file. Should a caseworker resign, his or her caseload might remain a mystery for months to the replacement caseworker in the absence of a complete, well-documented family file.

On appeal the Union argues that the trial court erred in vacating the arbitrator's decision because the arbitrator's modification of McKenzie's discipline from a discharge to a suspension drew its essence from the CBA. It argues that in the absence of contract language limiting the arbitrator's authority to do so, the arbitrator may modify discipline or reinstate a grievant even if the facts alleged by the employer are true; i.e., the arbitrator may find that the cause alleged is not sufficient to justify the discipline imposed.

 Our role in reviewing a challenge to an Act 195 arbitration[1] award is one of deference so long as the arbitrator's award draws its essence from the collective bargaining agreement. *Cheyney University*, 743 A.2d at 413. As the reviewing court, we must first determine whether the issue is within the terms of the collective bar-

1. Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.903.

gaining agreement, and thus properly before the arbitrator; if the issue is embraced by the agreement, the award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *Id.* A court will vacate an arbitrator's award only "where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Id.* The arbitrator's task is to determine the intention of the contracting parties by examining the collective bargaining agreement and the circumstances surrounding its execution, and the judiciary must respect the arbitrator's award if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention...." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977) (quoting *Ludwig Honold Manufacturing Company v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)); *Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association*, 760 A.2d 1214, 1218 (Pa.Cmwlth.2000).

 Article XIX, Section 9 of the CBA provides in pertinent part that "The County shall not demote, suspend, discharge, extend a probationary period or take any disciplinary action against an Employee without just cause." Article V, Management Rights, provides,

> The County has the exclusive right and power to manage, control and conduct its business, to plan and direct the working forces, including the right to hire, promote, schedule or transfer its Employees, or to suspend, discharge or demote its Employees for just cause and to make rules relating to operations as it deems advisable, subject, however, to the provisions of this Agreement and except as limited by law.

Article XIX, Section 1(D)(1.) states, "The arbitrator shall have no power or authority to add to, subtract from or modify the provisions of this Agreement in arriving at a decision of the issue(s) presented and shall confine his decision solely to the application and interpretation of this Agreement."

McKenzie's grievance stated, "I feel that I have been unjustly discharged and wish to be reinstated with all back pay and benefits. The Company has violated Article XIX, Section 9." (Arbitrator's Decision, p. 1.) The arbitrator summarized the Union's position as follows: "The Union asserts that the County imposed disparate discipline and failed to use progressive discipline in a case involving extenuating circumstances, thus the grievant should be reinstated." (Arbitrator's Decision, p. 1.)

Applying the standard of review as stated in *Cheyney University*, it is clear that the issue of whether CYS had just cause for discharging McKenzie falls within the terms of the CBA, which gives the Employer the exclusive right to discharge employees for just cause. We now consider whether the arbitrator's award can be understood as logically flowing from the CBA.

 The CBA does not define "just cause." When a collective bargaining agreement does not explicitly define just cause, the arbitrator may give meaning to the phrase. *School District of Springfield Township v. Springfield Township Educational Support Personnel Association*, 711 A.2d 602 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 556 Pa. 699, 727 A.2d 1125 (1998). "From the analysis of all of the court's recent opinions, and not focusing upon any one passage in a vacuum, we are informed that an arbitrator must consider all the circumstances

probative of the parties' intent and, where the CBA is ambiguous, may rely upon both the language of the agreement and the extrinsic evidence in his interpretation." *Greater Nanticoke*, 760 A.2d at 1220.

The dispute before the arbitrator was whether CYS had just cause for disciplining McKenzie. In making his determination in this case, the arbitrator set forth three elements "generally recognized as encompassing" just cause: whether the offense charged is normally considered to be serious enough to warrant the discipline imposed; if so, whether the grievant committed the charged offense; and finally, if the grievant committed the offense, whether any mitigating or aggravating factors or circumstances warrant the imposition of a more appropriate penalty. (Arbitrator's Decision, pp. 10–11.) After considering the evidence, the arbitrator concluded that the offense charged against McKenzie was serious enough to warrant discharge, and concluded, "there is no doubt of the grievant's guilt of the offense charged." (Arbitrator's Decision, p. 11.) The arbitrator went on to consider aggravating and mitigating factors and found that after McKenzie's August 8, 1997 performance evaluation rating of middle good, during the twelve-week period from August 20 until November 12, 1997 when he was suspended pending discharge, McKenzie worked only 60 percent of the time owing to a 14 day suspension (later determined to be unfounded), surgery, and vacation and sick days. The arbitrator concluded that evidence of incomplete files after McKenzie received his notice of termination could not be considered as a basis for the present discharge. The arbitrator concluded that McKenzie's discharge should be modified to a suspension and that he should then be reinstated in a "last chance" status such that any "failure to fulfill his responsibilities will render him liable for further discipline up to and including discharge." (Arbitrator's Decision, pp. 15–16.)

In *Crawford County*, on which the trial court relied, we applied the essence test as set forth in *Beaver County*. *Crawford County* involved the discharge of a county correction officer employed by the county prison, who failed to conduct required searches, ordered those under his command not to perform the searches, and accepted gratuities from inmates. In reversing the arbitrator's modification of the officer's penalty to a suspension without pay, we concluded,

> when an employee's conduct threatens the integrity of his public employer's absolute public duty and responsibility, just cause will be found for disciplinary action enabling the public employer to ensure that its operations and its public duty are not compromised. *Philadelphia Housing Authority* [*v. Union of Security Officers*], 500 Pa. at 216, 455 A.2d at 627 [ (1983) ]; [*Pennsylvania Liquor Control Board v.*] *Independent State Stores*, 520 Pa. at 277, 553 A.2d at 953–54 [ (1989) ]. Given a provision in the collective bargaining agreement that provides for managerial prerogative in disciplining employees, the degree of discipline imposed by the public employer cannot be overturned by the arbitrator, once the arbitrator expressly or impliedly finds just cause. [*County of Centre v.*] *Musser*, 519 Pa. at 395, 548 A.2d at 1201 [ (1988) ].

693 A.2d at 1391–92. More recently, the Supreme Court in *Cheyney University* criticized *Philadelphia Housing Authority, Independent State Stores,* and *Musser* (and *Crawford County* by extension) for applying variations of the essence test in reviewing the arbitrator's decision and presumably has retreated from its prior stance limiting an arbitrator's authority to overturn the discipline meted out by public

employers against employees who threaten their ability to perform their public duty.

Because the issue in this case, whether CYS had just cause to discharge McKenzie falls within the terms of the CBA, and because the arbitrator's interpretation of just cause as its application in this case can rationally be derived from the terms of the agreement, affirmance of the trial court is not warranted even though we believe that the arbitrator's decision, though rational, is incorrect. Accordingly, we reverse the order of the trial court.

### ORDER

AND NOW, this 13th day of June 2001, the order of the Court of Common Pleas of Greene County in the above-captioned matter is reversed.