**ROCHESTER AREA SCHOOL DISTRICT**

v.

**ROCHESTER EDUCATION ASSOCIATION, PSEA/NEA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2000.

Decided March 8, 2000.

---

Leslie D. Heller, New Brighton, for appellant.

Alfred L. Steff, Jr., Beaver, for appellee.

Before DOYLE, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

The Rochester Education Association, PSEA/NEA (Association) appeals from an order of the Court of Common Pleas of Beaver County (trial court), which vacated an arbitrator's award entered in favor of the Association. We affirm.

The Rochester Area School District (District) and the Association, as collective bargaining agent for the District's professional employees, are parties to a collective bargaining agreement (CBA) which, *inter alia*, governs the parties' respective rights and obligations in the development and adoption of District policies and procedures. In August 1997, the District, through its Board of School Directors (School Board), unilaterally adopted a policy raising students' Honor Roll requirements by one-fourth point.[1] In response, the Association filed a group grievance pursuant to Article II(E)(1) of the CBA. The Association charged that, because the clear language of the CBA requires joint development of *all* policies, the District violated the CBA by failing to consult with the Association when developing and implementing this new Honor Roll policy.

The District acknowledged that it implemented the new Honor Roll policy without the consent of the Association; however, the District disputed that its action violated the CBA. The District claimed that, although the CBA requires the School Board to obtain the Association's consent before changing policy affecting faculty rights and responsibilities, the CBA imposes no obligation on the School Board to secure prior Association approval for policy changes related to the School Board's managerial powers and prerogatives. The matter ultimately went to arbitration, where the Arbitrator considered "[w]hether the District violated the [CBA] by implementing a new policy regarding Honor Roll grade requirements without having first obtained the participation and consent of the Association?" (Arbitrator's decision at 2, R.R. at 38a.)

After considering the parties' disparate positions and the evidence of record, the Arbitrator ruled in favor of the Association, adopting the view that the clear, concise and unambiguous language of Article IX of the CBA obligates both parties to work jointly to develop *all* policies and procedures before those policies and procedures are finally accepted or rejected by the School Board.[2] (Arbitrator's decision

---

1. The School Board took this action pursuant to published recommendations of the Pennsylvania Department of Education (Department), to instructions and guidelines for various educational grants and programs developed and published by the Department, and to education programs of Governor Ridge's Administration aimed at enhancing the quality and accountability of public education. The School Board thus decided to "raise the bar" for students in an effort to increase the educational standards of, and promote educational excellence in, the District. Under the policy change, the lowest "Honors" classification was increased from 3.0 to 3.25, the middle classification of "High Honors" was increased from 3.5 to 3.75, and the "Highest Honors" classification remained at 4.0.

2. The Arbitrator also noted that evidence of the parties' past practice and bargaining history was consistent with this interpretation of Article IX. On behalf of the Association, Martha Hegner, a teacher and former chairperson of the Association's Policy and Procedure Committee (Committee), testified before the

at 5–8, R.R. at 41a–44a.) Accordingly, the Arbitrator concluded that the District violated Article IX of the CBA and directed the District "to rescind the new policy until such time as the parties can mutually develop a new policy in accordance with the [CBA]." (Arbitrator's decision at 8, R.R. at 44a.)

The District filed a petition with the trial court seeking to vacate the arbitration award on grounds that: (1) the award did not draw its essence from the CBA; (2) the Arbitrator exceeded his authority under the CBA; and (3) the award was contrary to law. As general support for each of these arguments, the District again maintained that, contrary to the Association's position and the Arbitrator's determination, Article IX of the CBA does *not* require the Association's participation and/or endorsement for *all* policy changes but, rather, preserves the School Board's authority to act on its own to initiate and adopt policies relating to inherent managerial prerogatives, such as the Honor Roll policy at issue here.

The trial court agreed with the District and vacated the Arbitrator's award, stating that it failed to "perceive any rational way in which Article IX could be interpreted to require the consent of the Association as to all policies prior to adoption by the School Board." (Trial ct. op. at 7, R.R. at 64a.) The Association now appeals to this court, arguing that the trial court erred in vacating the Arbitrator's award.

■ Initially, we note that our scope of review of an arbitration award, known as the "essence test," is highly circumscribed and affords broad deference to arbitrators' awards. A reviewing court may not overturn an arbitrator's interpretation of the parties' collective bargaining agreement if that interpretation can, in any rational way, be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Recently, in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA/NEA)*, —— Pa. ——, 743 A.2d 405 (1999), our supreme court observed an inconsistency in the Pennsylvania courts' application of this standard of review, noting that courts have applied varying degrees of judicial deference to arbitrators' awards. The supreme court thus deemed it prudent to restate the analysis to be applied under the essence test. Recognizing the many benefits of arbitration, the court emphasized that the role of a reviewing court should be one of great deference to the arbitrator chosen by the parties so that, in the vast majority of cases, the decision of the arbitrator will be final and binding upon the parties, the exception being where the arbitrator's award does not draw its essence from the CBA. Then, essentially reaffirming the essence test as originally stated in *Community College of Beaver County*, the court set forth a two-pronged analysis to determine whether this "essence test" was met, stating:

Arbitrator that, in the past, the Committee always worked jointly with the administration to develop all policies, resolving any disagreement on new policy through compromise. Hegner maintained that, notwithstanding its past practice, the District did not consult the Association in regard to the change in Honor Roll requirements.

The Association also presented testimony from Michael Hornick, an Association field representative who had been involved in the 1993 contract negotiations between the District and the Association. Hornick recalled that, during these negotiations, the District

sought unsuccessfully to remove language in Article IX of the CBA relating to joint development of new policies. Hornick then explained that, under the current CBA, new policy is created by the administration and staff before being sent to the School Board for approval or rejection and that policies rejected by the School Board go back to the parties for further review. According to Hornick, prior to the policy decision changing Honor Roll requirements, the District made no changes without approval from the Association.

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement.[3] Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 413. It is with this standard in mind that we consider the present appeal.

On appeal, the Association argues that the trial court acted outside its authority under the "essence test" by substituting its own interpretation of the CBA for the rational interpretation offered by the Arbitrator. According to the Association, because the CBA encompassed the joint development of District policies and procedures, the trial court should have deferred to the Arbitrator's interpretation of the CBA with respect to that matter, even if the trial court believed that the interpretation was erroneous. *See Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981) (holding that a court's inquiry ends once it has determined that the terms of the collective bargaining agreement encompass the subject matter of the dispute).

On the other hand, the District contends that the Arbitrator failed to consider the *entire* CBA, and, therefore, the Arbitrator's award cannot be said to have derived its essence from that agreement. Specifically, the District asserts that the Arbitrator ignored the plain language of Articles II(C)(7)(c), IV and IX of the CBA, and, as a result, fashioned an award that is viola-

tive of the CBA as well as applicable provisions of the Public School Code of 1949 (School Code)[4] and the Public Employe Relations Act (Act 195).[5] Upon consideration of *all* the relevant CBA provisions, we agree that there is no rational way in which the Arbitrator could have determined that the CBA requires the School Board to obtain input and approval from the Association prior to *all* policy changes, including those policies relating to the District's inherent managerial powers and prerogatives. *See Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association,* 520 Pa. 197, 553 A.2d 913 (1989). Indeed, a common thread running through the pertinent provisions of the CBA is the recognition that the School Board retains its exclusive right to initiate and adopt such management policies. A review of these CBA provisions illustrates the point.

The full text of Article IX of the CBA, entitled *"JOINT DEVELOPMENT OF POLICIES AND PROCEDURES"* provides:

It is understood that the administration and staff will jointly develop policies and procedures to be followed by all professional employees in the operation of the Rochester Education Complex. These "policies and procedures" will contain a provision permitting an employee to file a complaint with the Superintendent of Schools and/or with the Rochester Area Board of Education if he/she believes that his/her performance as a professional employee in the District has been hampered by any variation in the policies and procedures outlined. If the employee is still not satisfied that his complaint has been dealt with fairly, he/

---

3. The parties here do not question that the issue as defined is included within the terms of the CBA.

4. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

5. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

she may then file a grievance as outlined in this Agreement.

Policies 200–000 *Faculty Rights and Responsibilities,* will be changed when the Rochester Area Education Association and the Administration have endorsed such change and shall jointly recommend to the Board of Education for adoption. All other policies and procedures developed by the Administration and staff will first be approved and adopted, or rejected, by the Rochester Area Board of Education before they are placed in effect. All policies and procedures not approved by the Board will be returned to the Administration and [the Association] Committee for review and consideration. **The intent of this Article is to increase efficiency in operations and staff relationships, and should not be interpreted as an attempt to deprive the Rochester Area Board of Education of its "right to manage" as outlined in Article IV of this Agreement.**

(R.R. at 27a–28a.) (Emphasis added.) [6]

In turn, Article IV of the CBA, entitled *STATUTORY SAVINGS,* states in pertinent part:

The Board of Education will continue to manage and direct the operations of the Rochester Area School District as outlined in the Pennsylvania School Code and *other state and federal laws pertaining to school operations.*

. . .

Both parties agree to abide faithfully by the provisions of Act 195, the Pennsylvania Public Employees Relations Act.

(R.R. at 19a.)

Further, Article II(C)(7)(c) of the CBA, entitled *GRIEVANCE PROCEDURE,* states in pertinent part:

The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this agreement.

(R.R. at 17a.) Here, the District contends that the Arbitrator exceeded his power and authority under the CBA because his decision violates both the law and the terms of the CBA.

First, the District asserts that the Arbitrator's award makes the Association an equal partner in setting policy for the governance of the District and, thus, violates section 301 of the School Code, 24 P.S. § 3–301, which provides that the public school system of the Commonwealth *shall* be administered by a board of school directors. In addition, the District maintains that the Arbitrator's decision violates section 702 of Act 195, by taking away the inherent managerial prerogatives of the School Board.[7] That section of Act 195 provides:

**Public employers shall not be required to bargain over matters of inherent managerial policy,** which shall include

---

**6.** The Arbitrator did not consider the full text of Article IX and, instead, based his award entirely on the language contained in *a portion* of that Article. In fact, in interpreting Article IX of the CBA, the Arbitrator took note only of what he considered to be the Article's *pertinent* language, and, thus, he omitted the last sentence of Article IX, which we have emphasized here. (Arbitrator's decision at 5–6, R.R. at 41a–42a.) That sentence clearly states that the intent of Article IX is not to deprive the School Board of its right to manage the District as outlined in Article IV of the CBA. As noted, the Arbitrator failed to consider the last sentence of Article IX and did not discuss Article IV at all.

**7.** The District also calls our attention to section 703 of Act 195, 43 P.S. § 1101.703, which provides:

The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of service, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. **Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment** as well as the impact thereon upon request by public employe representatives.

43 P.S. § 1101.702. (Emphasis added.)

The Association attempts to counter the District's arguments, claiming that the Arbitrator's award is not contrary to the law or the CBA. In making this claim, the Association notes that, while certain subjects, including hours, wages and terms and conditions of employment are *mandatory* subjects of bargaining, section 701 of the School Code, 43 P.S. § 1101.701, other matters are *permissive* subjects of bargaining, including "matters of inherent managerial policy." Section 702 of Act 195, 43 P.S. § 1101.702. The Association concedes that setting Honor Roll standards is a matter of inherent managerial policy subject only to permissive bargaining but reasons as follows:

> In this case, the District contends that Arbitrator Kadilak's Award violates Section 702 of Act 195 by taking away the Board's inherent managerial prerogative to prescribe its functions and programs and to set standards of services. **However, the District clearly chose to give up these managerial rights as they pertain to setting school policies and procedures when it chose to bargain these subjects with the Association.** The result of that bargaining is Article IX of the Agreement. Although the development of school policies and procedures is a permissive, rather than a

8. The Association cites *Scranton* for the proposition that once a school board, which is not statutorily required to negotiate regarding matters of inherent managerial rights, choos-

mandatory subject of bargaining, the District is nevertheless bound by resulting provisions of the Agreement. *See Scranton Sch. Bd. v. Scranton Fed'n of Teachers, Local 1147, A.F.T.,* 27 Pa. Commw. 152, 155, 365 A.2d 1339, 1341 (1976).[8] Thus, Arbitrator Kadilak's Award clearly does not violate Section 702 of Act 195.

(Association's Reply Brief at 2–3.) (Emphasis added.) Obviously, the Association's reasoning and its reliance on *Scranton School Board* are based on the belief that the District elected to bargain over managerial rights; however, **the District here clearly *refused* to give up these managerial rights as they pertain to setting school policies and procedures when it expressly chose *not* to bargain these subjects with the Association.**

That the District did not opt to bargain away its right to determine managerial policies and procedures is apparent from Article I of the CBA, entitled *STATEMENT OF RECOGNITION AND TERM OF AGREEMENT,* which clearly limits the subjects selected for bargaining to those *mandated* by section 701 of Act 195. Article I provides:

> The Rochester Area Board of School Directors, hereinafter, "Employer", hereby recognizes the Rochester Area Education Association (PSEA/NEA), hereinafter "Association", as the exclusive representative for all full-time employees in the Bargaining Unit certified by the Pennsylvania Labor Relations Board, PERA–R–600–W and dated January 5, 1971, for the purpose of collective bargaining **on all matters with respect to wages, hours and other terms and conditions of employment.**

(R.R. at 15a.) (Emphasis added.)

 We recognize the deference that a court owes to an arbitrator's interpretation of a collective bargaining agreement.

. es to do so, it is bound, in the absence of contrary positive legislation, by the terms of the collective bargaining agreement.

However, contrary to the Association's argument, this is not a case where the court has intruded into the domain of the Arbitrator by substituting its own interpretation of the CBA for the rational interpretation offered by the Arbitrator. Rather, here, the Arbitrator has ignored and rendered meaningless Articles I, II(C)(7)(c), IV and IX of the CBA, which, along with relevant provisions of the School Code and Act 195, expressly preserve and protect the School Board's right to develop and adopt management policies for the District without the Association's participation or consent. Therefore, the Arbitrator's award does not draw its essence from the CBA, *see Greater Johnstown; North Star School District v. North Star Education Association,* 155 Pa.Cmwlth. 368, 625 A.2d 159 (1993), *appeal denied,* 537 Pa. 614, 641 A.2d 313 (1994), and, accordingly, we affirm the trial court's order vacating the Arbitrator's award.

## O R D E R

AND NOW, this 8th day of March, 2000, the order of the Court of Common Pleas of Beaver County, dated October 10, 1999, is hereby affirmed.