UNITED MINE WORKERS OF AMERICA, DISTRICT 2 and United Mine Workers of America, Local 2002

v.

COUNTY OF BLAIR.

**Appeal of County of Blair.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided June 24, 2004.

Reargument En Banc Denied Aug. 16, 2004.

Aimee L. Willett, Altoona, for appellant.

Claudia Davidson, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

The County of Blair (County) appeals from an order of the Blair County Court of Common Pleas (trial court) granting summary judgment to the United Mine Workers of America, Local 2002 (Union) in its challenge to an arbitrator's award. The trial court vacated the arbitrator's award, finding that the award could not be rationally derived from the provisions of the collective bargaining agreement (Agreement) relating to the calculation of vacation benefits for part-time employees. We reverse.

The Union and County entered into an Agreement effective from January 1, 2001 through December 31, 2003. As part of the negotiations, the County agreed, for the first time, to extend vacation benefits to part-time employees. Accordingly, Article 11, Section 7 of the Agreement states that:

> [p]art time employees [1] will earn vacation based on the full time employees['] accrual rates on a Pro Rata basis for all hours worked in the previous year.

Early in 2002, the Union became aware that the County was calculating the part-time employees' vacation benefits by using years of service from the commencement of the Agreement, January 1, 2001. On the other hand, full-time employees had their vacation time calculated on the basis of total years of service with the County. The Union filed a grievance arguing that the Agreement required the County to calculate part-time employees' vacation

---

1. Article I Section 5 of the Agreement defines part-time employees, in relevant part, as "employees who are regularly scheduled less than thirty five (35) hours per week." Article 1 Section 4 of the Agreement defines full-time employees, in relevant part, as "employees who are regularly scheduled thirty five (35) hours per week or more."

time in the same manner as the full-time employees, *i.e.*, by using total years of service with the County.

After a hearing on the matter,[2] the arbitrator denied the Union's grievance, reasoning that

[v]acation for part-time employees is covered in Article 11, [S]ection 7, which makes no mention of years of service, but determines vacation by hours worked in the previous year.

Arbitrator Order, 1. Thus, the arbitrator concluded that the calculation of vacation time for part-time employees is to be based on hours worked in the first year of the new Agreement.[3] In each successive year, years of service since January 1, 2001, would be used to calculate vacation time. Service before that date was irrelevant.

On October 8, 2002, the Union filed a complaint with the trial court alleging that the arbitrator's award was not rationally related to the Agreement. The County opposed the Union's complaint. Thereafter, the Union filed a motion for summary judgment, which the County opposed.

On June 2, 2003, the trial court granted the Union's motion for summary judgment and vacated the arbitrator's award. The trial court concluded that vacation time for part-time employees must be calculated based on their total years of service with the County, both before and after January 1, 2001. In so holding, the trial court

relied upon Article 11, Sections 1 and 4, which provide that:

Section 1. Employees covered in this agreement [4] shall be entitled each calendar year to annual vacations with pay according to the following schedule:

| Years of Service | Entitlement Per Year |
| --- | --- |
| 1 year inclusive | 5 days |
| 2 to 5 years inclusive | 10 days |
| 6 to 11 years inclusive | 15 days |
| 12 to 22 years inclusive | 20 days |
| Over 22 years | 25 days |

Employees may carry up to twice their annual accrual of vacation days into the next year.

\* \* \*

Section 4. All employees shall be granted on January 1, of each year of employment, their annual vacation based on their years of continuous service. Such employees may schedule their vacation throughout the calendar year; however, in the event that any such employee terminates, resigns, or retires prior to December 31 of any year, their vacation entitlement shall be paid to the employee at his current hourly rate.

Trial Court Opinion, 2. Based on these provisions, the trial court reasoned that the arbitrator

completely ignored the clear and unambiguous requirements of the Agreement ... the Agreement clearly requires that both part-time and full-time employees accrue their vacation benefits based on

---

**2.** No transcript was taken at the arbitration hearing. County's Brief at 15, n. 1.

**3.** The Union's Complaint to Vacate Arbitration Award provides that it learned in early 2002 that the County was incorrectly calculating benefits for part-time employees and filed its grievance in March 2002. Complaint to Vacate Arbitration Award ¶ 7–8, Reproduced Record, 7a–8a (R.R. ____). Thus, the Union was challenging the calculation of benefits for the first year of the Agreement, *i.e.*, from January 1, 2001, through January 1, 2002,

and forward. The arbitrator's award addressed how to calculate benefits for the first year of the Agreement by concluding that benefits should be calculated based on hours of service.

**4.** The trial court noted that the Agreement "defines 'employees covered in this agreement' as 'all full-time and regular part-time professional and non-professional employees.'" Trial Court Opinion at 2.

their years of service. Nowhere does the Agreement require that part-time employees' years of service commence as of the effective date of the Agreement. Indeed the pertinent language in the Agreement set forth above makes no distinction between full or part-time employees with regards to the accrual of vacation days.

Trial Court Opinion, 2–3. The County then brought this appeal.

On appeal, the County raises one issue for our consideration. It asserts that the trial court erred by substituting its interpretation of the Agreement for that of the arbitrator. Stated otherwise, the trial court failed to apply the proper test in an appeal of an arbitration award, *i.e.*, whether the award draws its essence from the collective bargaining agreement.

There is a strong presumption that the Legislature and the parties to a collective bargaining agreement intend for an arbitrator to judge disputes arising from their agreement. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 149, 743 A.2d 405, 413 (1999). Accordingly, courts must give great deference to the arbitrator's decision unless it can be shown that the award does not draw its essence from the collective bargaining agreement. *Id.* at 149–150, 743 A.2d at 413. The es-sence test requires a two-pronged analysis: (1) the reviewing court must determine whether the issue falls within the terms of the collective bargaining agreement and, if so, (2) the reviewing court must determine whether the arbitrator's interpretation can rationally[5] be derived from the collective bargaining agreement. *Id.* at 150, 743 A.2d at 413. "A court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Id.; see also Greene County v. District 2, United Mine Workers of America*, 778 A.2d 1259, 1262 (Pa.Cmwlth.2001).

The parties agree that the calculation of part-time employees' vacation time is covered by the Agreement. Thus, we must determine whether the arbitrator's award requiring the County to calculate part-time employees' vacation time from the commencement of the Agreement and forward was rationally derived from the Agreement.

The County argues that the arbitrator's award meets the essence test because Article 11, Section 7 of the Agreement does not state that past years of service are to be considered when calculating part-time employees' vacation time. The Union counters that the arbitrator's award fails the essence test because the arbitrator overlooked several provisions in Article 11

---

**5.** The Court in *Cheyney University* cautioned against using the term reasonable and rational interchangeably. The Court stated,

> We acknowledge that the terms "rational" and "reasonable" have often been used interchangeably as part of the standard of review. Indeed, in common parlance, the two words have similar meanings. However, we find that in the context of review of an Act 195 labor arbitration award, determining an award to rationally be derived from a collective bargaining agreement connotes a more deferential view of the award than the inquiry into whether the award is reasonable. An analysis of the "reasonableness" of an award too easily invites a reviewing court to ignore its deferential standard of review and substitute its own interpretation of the contract language for that of the arbitrator. Thus, we find that in this very limited context, a review of the "reasonableness" of an award is not the proper focus.

*Cheyney University*, 560 Pa. at 150, 743 A.2d at 413, n. 8.

of the Agreement that direct using past years of service to calculate vacation days.

Article 11, Section 7 of the Agreement (emphasis added) provides that part-time employees' will earn vacation time based on the "full time employees['] accrual rates on a Pro Rata basis *for all hours worked in the previous year.*" The parties agree that part-time employees did not receive vacation benefits prior to the commencement of the Agreement.[6] Accordingly, the arbitrator found that during the first year of service under the Agreement, January 1, 2001 through January 1, 2002, part-time employees accrue vacation time based on the *hours worked.* Once the part-time employees have worked for over a year under the Agreement, then the calculation of their vacation time will be based on *years of service,* as stated in Article 11, Sections 1 and 4 of the Agreement. The arbitrator's interpretation of the Agreement can be rationally derived from the terms of that document, and it was error for the trial court to set this interpretation aside.

The trial court concluded that the arbitrator "completely ignored the clear and unambiguous terms of the agreement," because Article 11 Sections 1, 4 and 7 requires "that both part-time and full-time employees accrue their vacation benefits based on their years of service." Trial Court Opinion, 2. The trial court is correct in that the Agreement requires the calculation of vacation for part-time employees to be based on years of service, but only after those employees have completed at least one year under the Agreement.[7]

There are other flaws to the trial court's interpretation of the Agreement. It reduces the language contained in Article 11, Section 7 that provides "for all hours worked in the previous year" to meaningless surplusage. *See Rochester Area School District v. Rochester Education As-*

---

6. The Union in Paragraph 5 of its Complaint to Vacate Arbitration Award provides, "[p]rior to the time that the Union represented theses [sic] employees, part time employees for the County did not enjoy vacation benefits. The Union successfully negotiated benefits for the part time employees in the agreement with the County." R.R. 6a.

7. The Union contends the arbitrator's interpretation of the Agreement does not make sense. Specifically it argues that:

> If a part-time employee earns vacation only on the basis of hours worked in the previous year, then a part-time employee with ten years' seniority (working twenty hours per week) earns the same number of vacation days as a part-time employee with one year of seniority (working twenty hours per week). There is no rational way to conclude that Section 7's reference to hours worked in the previous year permits the County to ignore part-time employees' years of continuous employment when determining their vacation benefits.

Union Brief at 10–11.

In addition, the Union argues that the Agreement distinguishes between full-time and part-time employees when necessary.

For example, Article 10 provides for paid holidays only to full-time employees, suggesting that part-time employees are not entitled to this benefit and similarly, Article 14 provides that full-time employees are entitled to more bereavement leave than part-time employees. The arbitrator's failure to draw such distinctions with respect to the accrual of vacation benefits is significant.

Finally, the Union contends that the bargaining history supports its interpretation. Keith Barnhart, the Union's Chief Negotiator, testified that the parties intended for vacation benefits for both full-time and part-time employees to be calculated on the same basis— the employees' years of service with the County.

However, all of these arguments address *how* the County is to calculate benefits not *when* the calculation of the new vacation benefits is to commence. Further, the Union overlooks the fact that the Agreement is intended to apply from January 1, 2001 forward. These provisions become important after part-time employees put in a year of service under the new Agreement.

**626** ■

*sociation,* PSEA/NEA, 747 A.2d 971 (Pa. Cmwlth.2000) (holding that arbitrator's award was not rationally related to the collective bargaining agreement where arbitrator ignored several terms of the agreement and provisions of the School Code and Act 195).[8] In addition, the trial court's interpretation adds a retroactivity provision, which was not expressly set forth in the Agreement.[9] *See Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association,* 760 A.2d 1214, 1219 (Pa.Cmwlth.2000) (noting that when the words of a collective bargaining agreement are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement).

■ However, the standard in an appeal of an arbitration award is not whether the arbitrator correctly applied contract law principles. The issue is whether the arbitrator's interpretation can be related to the language of the collective bargaining agreement. The arbitrator's conclusion that vacation time for part-time employees was to be calculated on the basis of *hours* for the first year and *years* of service thereafter finds support in the language of the Agreement. The trial court erred in substituting his judgment for that of the arbitrator. *Greene County,* 778 A.2d at 1264 (holding that arbitrator's award was rationally related to the agreement terms and the trial court erred by substituting its judgment for that of the arbitrator al-

though the Court believed arbitrator's award to be incorrect).

For these reasons, we reverse the trial court.

## ORDER

AND NOW, this 24th day of June, 2004, the order of the Blair County Court of Common Pleas dated May 29, 2003, in the above-captioned matter, is hereby reversed.

**8.** In *Rochester Area School District,* the Court held that the arbitrator's award was not rationally related to the collective bargaining agreement where the arbitrator required a school district to consult with the Rochester Education Association PSEA/NEA (Association) to develop a new honor roll policy. In doing so, the arbitrator ignored and rendered meaningless several sections of the agreement and ignored relevant provisions of School Code and Act 195 that expressly preserved the

school district's rights to adopt management policies without the Association's consent.

**9.** In addition, this interpretation is supported by the County's understanding of the Agreement as indicated by its refusal to credit part-time employees with vacation time in the same manner as full-time employees since the commencement of the Agreement.