Joseph D. Genco, Appellant *v.* Bristol Borough School District, Appellee.

Argued October 8, 1980, before Judges CRAIG, MAC-PHAIL and WILLIAMS, JR., sitting as a panel of three.

*Miriam Reimel,* for appellant.

*Thomas J. Profy, III,* for appellee.

OPINION BY JUDGE CRAIG, December 3, 1980:

Joseph D. Genco, who formerly held a school district position of "Assistant to the Principal, Coordinator of Physical Education, Athletics K-12 and Student Affairs,'' here appeals from the Court of Common Pleas of Bucks County, which dismissed his appeal from the decision of the board of the Bristol Borough School District which purported to abolish that position, and reassigned him to the position of classroom teacher.

The parties agree that Genco's status as occupant of the abolished position was that of a nonprofessional employee of the district, and that Section 514 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §5-514, is the statute governing the present controversy. Our Supreme Court has stated, in *Coleman v. Board of Education of the School District of Philadelphia,* 477 Pa. 414, 383 A.2d 1275 (1978), that "[s]ection 514 establishes rights in a School District employee not to be dismissed without specific cause and not to be dismissed without due notice and a statement of reasons, and it establishes cor-

responding duties in the School District. It also establishes a right to a hearing. . . .'' 477 Pa. at 423, 383 A.2d at 1280.

The district afforded Genco a hearing, on his demand, as the district solicitor had recommended at the time the board originally eliminated the position. However, after the hearing, a majority of the board concluded that the position had been abolished for budgetary and economic reasons; we note that the board's special counsel for the proceeding had recommended that the board rescind its action eliminating the position and reinstate Genco, on the ground that the evidence demonstrated that action *not* to have been based on financial considerations, but, rather, to have been an arbitrary and capricious action.

Genco appealed to the lower court under the Local Agency Law, 2 Pa. C. S. §751 *et seq.*, alleging that the position's elimination, and his consequent reassignment, were abuses of the board's discretion because they were actually undertaken solely in response to public pressure unrelated to the existence of the position, but directed at Genco as its occupant.

The trial court accepted the district's argument that financial considerations caused the board to eliminate the position; the court found the applicable law to be that:

> [W]here, however, a non-professional employe is removed from his position for reasons of economy the protections of that section [Section 514] do not apply and the action is not an adjudication as such is defined in the Local Agency Law. Therefore, he has no right to a hearing nor to an appeal to this court under the Local Agency Law. See Sergi v. Pittsburgh School District, 28 Pa. Commonwealth Ct. 576 (1977) and Pefferman v. School District of Pittsburgh, 35 Pa. Commonwealth Ct. 515 (1978).

We agree, but add only that the converse of that principle must be equally true, *i.e.,* if the employee's removal or the elimination of the position was for reasons other than economy, the protections of Section 514 do apply and the action is an adjudication under the Local Agency Law.[1]

The issue here, as in the trial court, is precisely as Judge GARB there stated: "In view of the foregoing, the only question remaining for disposition is whether appellant's termination from his position as assistant to the principal, coordinator of physical education, athletics K-12 and student affairs was for reasons of economy."[2]

The record reveals the following events leading to the board's action:

At least until sometime in the 1977-78 school year, the majority of the duties encompassed in the now-abolished position were the responsibility of one Mr. DeAngelo, the "Coordinator of Physical Education, Athletics K-12 and Student Affairs," at a salary of $22,000 per year. Mr. DeAngelo went on sabbatical leave commencing July 1, 1977.

Effective August 15, 1977, those duties were absorbed by Mr. Yates, who was to hold that position in

---

[1] As Judge GARB astutely noted in his opinion, an inquiry into the merits of the employee's allegations in a case such as this is essential to a determination of the jurisdictional requisites of the Local Agency Law, including the question of whether the board's decision is to be considered a personnel action and thus an adjudication, or a budgetary action which is not an adjudication under *Pefferman v. School District of Pittsburgh,* 35 Pa. Commonwealth Ct. 515, 387 A.2d 157 (1978) and *Sergi v. Pittsburgh School District,* 28 Pa. Commonwealth Ct. 576, 368 A.2d 1359 (1977). As Judge GARB stated: "Ironically, however, in order to make this disposition we essentially decide the case on its merits as submitted by the appellant."

[2] In our view, neither *Sergi* nor *Pefferman,* both *supra,* directly controls this case, because in neither of them was the underlying elimination of a position *itself* challenged by the affected employee.

an acting capacity until Mr. DeAngelo's return. However, in September 1977, Mr. Yates vacated that position to accept an assistant principal's position.

At a board meeting on September 27, 1977, Mr. Yates was appointed "Acting Assistant Principal"; Mr. Genco, the appellant, was at the same time appointed "Acting Coordinator of Athletics and Student Activities", effective from September 21, 1977, and was granted a pro-rated $2000 supplemental salary over what he received in his then teaching position. This appointment was expected to be only for the duration of Mr. DeAngelo's sabbatical.

At some time undisclosed by the record, but after the above appointments, Mr. DeAngelo died, thus leaving his regular position vacant.[3]

Sometime in early February 1978, the district posted a vacancy notice for a new position entitled "Assistant to the Principal, Coordinator of Physical Education, Athletics K-12 and Student Affairs" setting the application deadline at February 17, 1978. This position encompassed all the duties of Mr. DeAngelo's position, and also included new administrative and supervisory duties. This expansion and upgrading, according to the district superintendent, was related to the fact that the salary for the new position was in the range of $20,000 per year.

The minutes of the board's meeting of March 28, 1978 reveal that controversy existed as to the proposed appointment of Genco to the new position. A representative of the local teacher's association protested that Genco was not properly certified for the position; the district superintendent squarely contested that claim, and unequivocally stated that Genco was indeed properly qualified. A Mr. Sottile, himself an applicant for the position, objected that the board itself had not con-

---

[3] The record does not reveal whether or not any action was ever taken to remove that position from the district's budget.

ducted interviews for the position; it was explained that the board never did so itself, and usually relied on the recommendation of the superintendent and administration. At the conclusion of these discussions, on motion properly made, the board voted to appoint Genco to the position, effective immediately, at a salary of $19,000 per year.

Genco's appointment remained a controversial topic in the following weeks. In a letter appearing in the May 2, 1978 issue of the local newspaper, one board member protested Genco's appointment over the application of Mr. Sottile, with no mention of the efficacy of the position itself.

About 250 residents of the district were present at the board's May 9, 1978 meeting, as the minutes state, "because of the appointment of Joseph D. Genco instead of James Sottile." The issue of Genco's qualifications was again raised, by a board member and also by a representative of the Pennsylvania State Education Association. After substantial attention had been given to the issue, the question remained unresolved; the board then voted to suspend the position, and re-establish the temporary position formerly held by Genco and Yates, until the Department of Education clarified its position regarding certification requirements. However, the record indicates that this action apparently had no effect on Genco's duties or compensation.

At the board's June 13, 1978 meeting, a motion to rescind the above motion was defeated; the question of certification requirements was again discussed, the superintendent indicating that the Department of Education's position was still unclear. Following that, a motion was made and seconded to abolish the recently created position, "for budgetary and economic considerations." One board member stated that the position should not be abolished because of its necessity

and because the board had been aware of the district's financial situation when it acted in March to appoint Genco to it. The solicitor's opinion was that the board should not do so until it had been carefully considered and made the subject of a hearing; further, his opinion was that the abolition would be within the board's power, "provided that the reasons for abolishing the position satisfy the School Code." After some discussion, which the minutes do not reveal to be detailed, the board, by a 5-4 vote, decided to abolish the position.

Genco was informed by the superintendent's letter of June 15, 1978, that the position had been abolished, and that:

The school directors have classified this as a Temporary Athletic Directors Position until June 30, 1978. You will continue your duties under this present position.

As a result of the elminimation [sic] of the Asst. to the Principal Position, your new salary effective June 15, 1978 will be $15,700. This is based on your teaching salary of $13,700 and a supplemental of $2000.

If you disagree with this action, you have a right to request a hearing.

On July 7, 1978, through counsel, Genco requested a hearing on his "demotion from the position of Assistant to the Principal." By letter of August 24, 1978, Genco was informed that hearing was scheduled for September 14, 1978.

At a special meeting on August 30, 1978, the board assigned Genco to his former classroom teaching position.

After hearings on September 14 and 28, 1978, a majority of the board decided, under date of January 9, 1979, to reaffirm its action of June 13, 1978, abolishing the position because of budgetary factors, including a decrease in state aid due to declining enrollment

and a prospective substantial increase in the tax burden on the district. As noted above, the board's special counsel recommended otherwise.

Genco here contends, as he did before the board and the court below, that the above events, and the testimony adduced at the hearing regarding those events, clearly demonstrate that the board's action was an abuse of its discretion on the ground that that action was taken as a subterfuge to effectuate Genco's removal from the position; further, Genco contends that the record does not contain substantial evidence to support the lower court's dispositive conclusion that the board acted "for reasons of economy."

There is no question that the creation and abolition of positions is within the power of school boards. "The only limitation which should be imposed on the exercise of this power should be that the board must act intelligently, impartially and with sound discretion." *Smith v. Darby School District,* 388 Pa. 301, 314, 130 A.2d 661, 669 (1957).

The standard by which courts must assay the propriety of a discretionary action was set forth at length in *Allen v. Uniontown Area School District,* 4 Pa. Commonwealth Ct. 183, 186-8, 285 A.2d 543, 545-6 (1971):

In the case of Lamb v. Redding, 234 Pa. 481, 484-5, 83 A. 362 (1912) the Court stated: 'The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited; and *they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice.* Discretion involves the exercise of judgment incidental to the proper performance of the duty delegated[.]

[W]hen the contention is that the proposed action is unwise, no matter by what consensus of opinion this is shown, the law will refer it to mistaken judgment over which it has no supervision. But [if] it cannot be so referred; if the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, *the law will regard it as an abuse of power,* a disregard of duty, and it becomes the duty of the court to interfere for the protection of the public.' (Emphasis added.)

At 486 the Court continued: *'We should sustain the school board in the present contention if the evidence left us at all in doubt, not as to the wisdom of their policy, for that is no concern of ours, but as to whether that policy was determined upon by public considerations alone. Unfortunately it does not, but is convincing that public interests have been subordinated if not wholly ignored.'* (Emphasis added.) In essence this approach continues in application by our courts to the present day. The Supreme Court in Hibbs et al. v. Arensberg et al., 276 Pa. 24, 26, 119 A. 727 (1923), contributes further to our arriving upon a workable definition of 'discretion.' 'Executive officers of municipal and school districts have many discretionary powers in performing their functions; *ordinarily courts will not interfere with this exercise;* but if it appears their action is based on a *misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to the public welfare.* Executive officers are

clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation. *When their acts are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden.* Courts can and will interfere only when it is made *apparent* this discretion has been abused. *Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment,* but generally springs from improper influences, a disregard of duty, or a violation of law.' (Emphasis added.) In the cases of Regan et al. v. Stoddard et al., 361 Pa. 469, 65 A.2d 240 (1949) and Weber v. Philadelphia, 437 Pa. 179, 262 A.2d 297 (1970), the Court cited with approval those cases upon which we rely for our analysis of the exercise of discretion by a school board.

On the record before us, we must hold in favor of appellant Genco.

In its January 1979 decision, the board majority stated that its decision was predicated on declining enrollment and the necessity of a significant tax increase. The record reveals that enrollment data were presented to the board at the very meeting at which the new position was first filled; record statements by the district superintendent and a dissenting board member indicate that the board was informed of the tax increase required by the projected 1977-78 budget as early as February 1977, in advance even of the posting of the job notice.

The district's brief makes repeated allusions to public outcry over that financial situation. We have read the record more than carefully, and fail to find *any* reference to or evidence of public objection to the projected tax burden.

On the contrary, as Genco points out, considerable controversy existed as to who should occupy the position, in board discussion, in the expressed concern of the local and state education associations and the public, and in the board member's letter to the editor previously described—these factors point unswervingly to the proposition that the position itself was a critical and valuable one in the minds of the board, the school personnel, and the public.

The record contains, in support of the district's position, only conclusory statements putting forth economics as the rationale for the board's action, and similar self-serving statments that the budget was considered "sometime" over the months of April, May, and June 1977. However, the superintendent's testimony states unequivocally that he did not "remember any discussions concerning eliminating the position ... until we had reached the stage of the, you know, controversy." The record also indicates that the board's budget committee never met at all, much less having met to seriously consider the efficacy of the new position.

The district also contends that the elimination of the position, even assuming that the financial element was not addressed until after Genco's appointment, was appropriate because it was only recently created, especially in relation to the high administrative ratio in the district. As Genco points out, however, that argument lacks substance when viewed in relation to Mr. DeAngelo's former position, which the new position was to supplant and supplement, even with some savings to the district. To contend that the district had functioned without such a position in the past is fallacious; the former athletic director position[4] cannot be ignored.

---

[4] See footnote 3, supra.

Although we are indeed reluctant to intervene in the discretionary management of the district's affairs, we must and do conclude that appellant here has carried the heavy burden of showing the board's action to have been based on improper influences and considerations other than the public economy, and to have been taken without proper inquiry into the facts necessary to an intelligent decision.

Because the record before us does not provide any support for the abolition of the position, whether for economic reasons or any other legitimate impersonal management reason, we find it to be an arbitrary action which cannot be cured by the label of "economic reason" ascribed to it by the board majority.

Because we find that action to have been arbitrary, Genco's removal from the position can only be considered a disguised personnel action, and therefore an adjudication taken without regard to the protections afforded employees by Section 514.

As such, that personnel action must be considered a nullity. As in *Coleman, supra,* because "the School District provided [him] with no reasons for [his removal], [he] has established a clear legal right to reinstatement." *Supra* at 423-4, 383 A.2d at 1280.

Accordingly, we will reverse the order of the trial court, and order that Joseph D. Genco be reinstated to the position of "Assistant to the Principal, Coordinator of Physical Education, Athletics K-12 and Student Affairs," with back pay and benefits from the date of the ineffectual action of the board abolishing the position, with due allowance for sums earned by alternate employment in that period.

## ORDER

AND Now, this 3rd day of December, 1980, the order of the Court of Common Pleas of Bucks County at No. 79-2207-05-6, dated October 24, 1979, is reversed,

and it is ordered that the Bristol Borough School District reinstate Joseph D. Genco to the position of "Assistant to The Principal, Coordinator of Physical Education, Atheletics K-12 and Student Affairs", with back pay and benefits from June 15, 1978, until the present, with due allowance for sums earned by alternate employment in that period.

Judge MacPhail dissents.