APOLLO–RIDGE SCHOOL
DISTRICT, Appellant,

v.

APOLLO–RIDGE EDUCATION
ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.
Decided May 29, 2002.

public utility was based upon a legitimate distinction.

Isobel L. Storch, Pittsburgh, for appellant.

William K. Eckel, Johnstown, for appellee.

Before COLINS, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.[1]

The Apollo–Ridge School District (District) appeals from an order of the Court of Common Pleas of Armstrong County (trial court), which affirmed an arbitration award granting back pay to teachers Terra Begolly and Dan Rzewnicki pursuant to a collective bargaining agreement (CBA) negotiated under the Public Employe Relations Act[2] (PERA) between the District and the Apollo–Ridge Education Association (Association). The Association represents a bargaining unit comprised of teachers, school counselors, nurses and librarians. We now affirm in part and reverse and remand in part.

The facts in this case are undisputed. Each year, the District's Board of School Directors (Board) selects persons to lead various extracurricular programs offered to the District's secondary students. The CBA refers to these positions as "extra-duty assignments." (R.R. at 16a). Until the 1999–2000 school year, the Board always adopted the high school principal's recommendations when making extra-duty assignments. The principal's recommendations for the 1999–2000 school year included Begolly and Rzewnicki for "senior class sponsor" and "assistant seventh grade boys basketball coach," respectively. Although Begolly and Rzewnicki had served in those particular capacities during prior school years, the Board did not select either Begolly or Rzewnicki for these extra-duty assignments for the 1999–2000 school year. Instead, the Board elected to fill the positions with two people who were not members of the bargaining unit.[3]

The Association filed grievances with the District on behalf of Begolly and Rzewnicki, contending that the Board's failure to re-appoint Begolly and Rzewnicki violated the CBA. The District denied that the assignment of extra-duty work was covered by the CBA and, therefore, contended that the grievances were not arbitrable. When the District and the Association were unable to resolve their differences, they submitted the grievances to arbitration.

After a hearing, the arbitrator determined that the matter was arbitrable and sustained the Association's grievances, awarding back pay to Begolly and Rzewnicki. The arbitrator concluded that past practice had given rise to a local working condition protected by the CBA and, therefore, the Board was obligated to assign extra-duty work to those persons recommended by the high school principal.

The District petitioned the trial court to vacate the arbitration award, arguing that: (1) the grievances were not arbitrable; (2) the Board's actions did not violate the CBA; and (3) the arbitration award interfered with the Board's statutory authority to hire and fire teachers. The trial court rejected each of the District's arguments and denied the petition. The District now appeals to this court, raising the same three arguments.

---

1. This case was reassigned to this author on February 12, 2002.

2. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301. PERA is sometimes referred to as "Act 195."

3. Begolly's position was given to an assistant principal; Rzewnicki's position was given to a person who was not otherwise employed by the District.

Our Supreme Court has developed the following two-prong analysis, known as the "essence test," which a court must follow when reviewing a labor arbitration award under PERA:

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.

*State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999).

 Under the first prong of the "essence test," this court must determine whether the issue raised by the grievances is covered by the terms of the CBA. The District contends that this question should be answered in the negative because the CBA is silent as to how extra-duty assignments are to be made. However, the arbitrator concluded, and the trial court agreed, that the grievances were arbitrable because, even though the CBA does not describe precisely how extra-duty assignments are to be made, it does include an extensive list of extra-duty assignments and their salaries. We agree.

Article VIII, Section C, of the CBA states that "[c]ompensation for extra-duty assignments to be provided under this agreement are reflected in Appendix C attached to and incorporated in this agreement." (R.R. at 16a). Appendix C, entitled "Supplemental Pay Schedule," lists all of the extra-duty assignments and their salaries. (R.R. at 47a–50a). We believe the words "to be provided *under this agreement*" make it clear that the parties negotiating the CBA intended that bargaining unit members would hold the extra-duty assignments. Indeed, the very term "extra-duty assignment" evidences this intent when we consider the case of a non-bargaining unit member, not otherwise employed by the District, who is chosen for such an assignment. In such a case, it would hardly be appropriate to call the assignment "extra-duty" work; rather, it would be the *only* work that person performed for the District.

Notwithstanding this language of the CBA, the District maintains that the grievances were not arbitrable, relying on *Harbor Creek School District v. Harbor Creek Education Association*, 536 Pa. 574, 640 A.2d 899 (1994), for the general proposition that the assignment of extracurricular work to teachers cannot be subject to arbitration. We disagree that *Harbor Creek* can be used for the blanket proposition that grievance procedures are never available for disputes over extracurricular work. In fact, in *Cranberry Area School District v. Cranberry Education Association*, 713 A.2d 726 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 563 Pa. 621, 757 A.2d 935 (1999), this court specifically rejected the notion that *Harbor Creek* created a *per se* rule that disputes involving extracurricular duties are not arbitrable.

In *Harbor Creek*, our Supreme Court addressed the arbitrability of a dispute over a school district's transfer of duties from bargaining unit members to non-bargaining unit members. The court interpreted the wording of the collective bargaining agreement in that case to mean that the issue was not arbitrable. There, the collective bargaining agreement made grievance procedures available only to "professional employees," and stated that "after-hour assignments performed by teachers, whether paid or unpaid, except for class-related activities, are voluntary

'non-teaching duties.'" *Harbor Creek*, 536 Pa. at 578, 640 A.2d at 901–902. The court reasoned that because teachers are not functioning as "professional employees" when they perform the non-teaching duties of extracurricular work, they may not invoke the grievance procedures, including arbitration, set forth in the collective bargaining agreement for disputes over extracurricular work.

The language of the CBA here is very different from the language of the collective bargaining agreement in *Harbor Creek* and requires a different result. The *Harbor Creek* agreement professed to provide grievance procedures only to "professional employees," a term defined by Section 301(7) of PERA as:

> any employe whose work: (i) is predominantly intellectual and varied in character; (ii) requires consistent exercise of discretion and judgment; (iii) requires knowledge of an advanced nature in the field of science or learning customarily acquired by specialized study in an institution of higher learning or its equivalent; and (iv) is of such character that the output or result accomplished cannot be standardized in relation to a given period of time.

43 P.S. § 1101.301(7). Based on this definition, the court in *Harbor Creek* concluded that a teacher did not act as a "professional employee" when leading extracurricular activities. The CBA here, by contrast, does not limit the availability of grievance procedures to "professional employees." Indeed, Article XVII of the CBA, entitled "Grievance Procedure," does not even use the term "professional employee." Article XVII simply defines "grievance" as the "alleged violation, misinterpretation or inequitable application of *any* of the provisions of this agreement." (R.R. at 32a) (Emphasis added). Given that Article VIII, Section C, of the CBA states that extra-duty assignments are "to be provided under this agreement," we can only conclude that a dispute over extra-duty assignments is a dispute over the provisions of the CBA and, therefore, is subject to arbitration. In short, the first prong of the "essence test" has been met.

██ We turn now to the second prong of the "essence test," which requires us to determine whether the arbitrator's award was rationally derived from the CBA and, therefore, drew its essence from the agreement. An arbitration award must be upheld if it can, in any rational way, be derived from the collective bargaining agreement in light of the language, context, and other indicia of the parties' intentions. *School District of the City of Erie v. Erie Education Association*, 749 A.2d 545 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, —— Pa. ——, 795 A.2d 983 (Pa.2000). The District argues that the arbitrator's award was not rationally derived from the CBA because the CBA contains no specific term or provision addressing whether extra-duty work may be turned over to non-bargaining unit personnel or spelling out how extra-duty assignments are to be made. For the reasons that follow, we agree.

██ Admittedly, past practice can give rise to an employment condition which is not contained in the specific written language of a collective bargaining agreement. *See, e.g., Danville Area School District v. Danville Area Education Association, PSEA/NEA*, 562 Pa. 238, 754 A.2d 1255 (2000); *City of Erie v. International Association of Firefighters, Local 293*, 104 Pa.Cmwlth. 394, 522 A.2d 132 (1987). The arbitrator made such a finding in the present case. Nevertheless, such a finding acts to effectively usurp the Board's discretionary power in this case.

The Board consists of elected officials with the sole power and discretion in selecting persons to fill the extra-duty assignment positions. Despite the fact that the Board had always previously adopted the high school principal's recommendation in making these extra-duty assignments, the Board did so under its own discretion.[4] The arbitrator's finding here serves to transfer the Board's discretionary power to the high school principal, a non-elected official. We cannot say that such a transfer of power was ever envisioned in, let alone rationally derived from, the CBA.[5]

Accordingly, the order of the trial court, insofar as it affirmed the arbitrator's award concluding that the Association's grievances relating to the issue of extra-duty assignments were arbitrable, is affirmed. However, the order of the trial court, insofar as it affirmed the arbitrator's award concluding that the District's past practice had given rise to a local working condition protected by the CBA and awarding back pay to Begolly and Rzewnicki, is reversed. The case is remanded to the trial court, with specific instructions to remand to the Board, to allow the Board to utilize its discretion in making extra-duty assignments from within the appropriate bargaining unit, i.e., the Association.

4. The Board's exercise of this discretion can be subject to this Court's review. *See, e.g., Genco v. Bristol Borough School District*, 55 Pa.Cmwlth. 78, 423 A.2d 36 (1980); *Uniontown Area School District v. Allen*, 4 Pa. Cmwlth. 183, 285 A.2d 543 (1971).

5. Moreover, Section 507 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 5–507, specifically authorizes and empowers the board of school directors of each school district to carry out "any or all provisions of this act." Section 508 of the Code, 24 P.S. § 5–508, details certain subjects upon which a majority vote of the board "shall be required," including "[a]ppointing or dismissing ... teachers,"

## ORDER

AND NOW, this 29th day of May, 2002, the order of the Court of Common Pleas of Armstrong County (trial court), insofar as it affirmed the arbitrator's award concluding that the grievances filed on behalf of the Apollo–Ridge Education Association were arbitrable, is affirmed. The order of the trial court, insofar as it affirmed the arbitrator's award concluding that the prior conduct of the Apollo–Ridge School District (the District) had given rise to a local working condition protected by the parties' collective bargaining agreement and awarding back pay to teachers Terra Begolly and Dan Rzewnicki, is hereby reversed. The case is remanded to the trial court, with specific instructions to remand to the District's Board of School Directors (Board), to allow the Board to utilize its discretion in making extra-duty assignments from within the appropriate bargaining unit, i.e., the Association.

## CONCURRING AND DISSENTING OPINION BY Judge, FRIEDMAN.

I concur in part and dissent in part. I agree with the majority that the dispute in this matter is subject to arbitration. I also agree with the majority that the arbitrator's reasoning was faulty to the extent

"[a]ppointing tax collectors and other appointees" and "[f]ixing salaries or compensation of ... teachers, or other appointees of the board...." Hence, even if the Board in this case had chosen to delegate its authority to the high school principal to appoint teachers or others to extra-duty assignments, such action would be violative and/or inconsistent with the Code and would not be upheld. *See, e.g., City of Easton v. American Federation of State, County and Municipal Employees*, 562 Pa. 438, 756 A.2d 1107 (2000); *Mifflinburg Area Education Association v. Mifflinburg Area School District*, 555 Pa. 326, 724 A.2d 339 (1999).

that it suggests that the Board of School Directors (Board), merely because it did so in the past, is forever obligated to follow the high school principal's recommendations when assigning extra-duty work.[1] However, unlike the majority, I do not believe that a remand is appropriate. I do not believe that this mistake in the arbitrator's reasoning is fatal to the arbitrator's award of back pay to teachers Terra Begolly and Dan Rzewnicki (Award). Given the deferential standard of review required for a challenge to an arbitrator's award under the Public Employe Relations Act,[2] I believe that the Award can be rationally derived from the collective bargaining agreement (CBA), using reasoning which differs only slightly from that upon which the arbitrator relied.

The undisputed testimony before the arbitrator established that, until the 1999–2000 school year, the Board consistently assigned extra-duty work to members of the bargaining unit who expressed an interest in the work and were recommended by the high school principal. Based on this testimony, the arbitrator concluded that the Board's past practice of following the principal's recommendations had given rise to a local working condition protected by the CBA. Thus, reasoned the arbitrator, the Board violated the CBA when it abandoned this past practice. The majority concludes that the Award was not rationally derived from the CBA because it interfered with the Board's discretionary hiring power. However, under the "essence test," an arbitration award *must* be upheld if it can, *in any rational way*, be derived from the CBA. *See School District of the City of Erie v. Erie Education Association,* 749 A.2d 545, 546 (Pa.

Cmwlth.) *appeal denied,* —— Pa. ——, 795 A.2d 983 (Pa.2000). Although the arbitrator based his the conclusion that the Board violated the CBA on the Board's failure to follow the high school principal's recommendations, the arbitrator just as easily could have based that conclusion on the fact that the Board assigned the extra-duty work to non-bargaining unit members. Put another way, the "past practice" that was protected by the CBA was the past practice of giving extra-duty assignments to bargaining unit members, not the past practice of following the high school principal's recommendations. This would have been the correct way for the arbitrator to come to the same result, and it would have been consistent with other case law in which this court affirmed arbitration awards on the ground that bargaining unit members had preference over non-bargaining unit members in acquiring extra-duty assignments. *See,* e.g., *Cranberry Area School District v. Cranberry Education Association,* 713 A.2d 726 (Pa. Cmwlth.1998), *appeal denied,* 563 Pa. 621, 757 A.2d 935 (1999).

Instead of affirming the arbitrator's decision, the majority remands the case to the trial court "with specific instructions to remand to the Board, to allow the Board to utilize its discretion in making extra-duty *assignments from within the appropriate bargaining unit, i.e., the Association.*" (Majority op. at 8; emphasis added.) The majority's decision to remand the case necessarily implies that the Board violated the CBA by choosing non-bargaining unit members for the extra-duty work. Otherwise, there would be no need for a remand; the majority could simply have reversed

---

**1.** Indeed, this would conflict with section 508 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 5–508, which gives the Board the duty and authority to vote on the hiring of teachers.

**2.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. This act is sometimes referred to as "Act 195."

the trial court's decision to uphold the Award. Given that the Board violated the CBA, the proper inquiry is whether the arbitrator's decision to award back pay to Begolly and Rzewnicki was rationally derived from the CBA. *School District of the City of Erie.* I believe it was. The extra-duty work was taken away from Begolly and Rzewnicki and given to non-bargaining unit members in violation of the CBA. Begolly and Rzewnicki, as members of the bargaining unit and the former holders of the extra-duty assignments, were injured as a result. Therefore, the Award, which granted back pay to Begolly and Rzewnicki for the 1999–2000 school year, has a perfectly rational basis in the CBA and should be upheld.

I do not mean to suggest that Begolly and Rzewnicki[3] automatically are entitled to be selected for their former extra-duty assignments in any school year other than the 1999–2000 school year at issue here. As the majority notes, the Board must be free to select the persons of its choosing for extra-duty work. However, as the majority *also* notes, the persons chosen *must be bargaining unit members.* By reversing the award of back pay to the injured parties in this case, the majority is allowing the Board to violate the CBA with impunity.

Additionally, the majority's decision to remand this case so that the Board can re-select a senior class sponsor and an assistant seventh grade boys' basketball coach "from within the appropriate bargaining unit" seems, to me, illogical. The arbitrator's Award, dated May 26, 2000, pertains only to the extra-duty assignments made for the 1999–2000 school year. The year is now 2002. The majority is giving the Board leave to go back in time and name two bargaining unit members as holders of

extra-duty assignments that have already been performed by two *non*-bargaining unit members in violation of the CBA. Whom will the Board select? The Board cannot select the non-bargaining unit members who actually performed the work. Nor is the Board likely to select Begolly and Rzewnicki, who litigated against its initial choices. A remand allows the Board to avoid any consequence for violating the CBA. This result is unjustified. Moreover, it oversteps the deferential standard of review with which this court should approach the arbitrator's decision.

For all of the above reasons, I would affirm.

---

**3.** The record does not reveal that any other bargaining unit members applied for the ex-

tra-duty work sought by Begolly and Rzewnicki.