NORRISTOWN AREA SCHOOL
DISTRICT, Appellant

v.

NORRISTOWN EDUCATIONAL
SUPPORT PERSONNEL
ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued March 3, 2004.

Decided April 26, 2004.

Jeffrey T. Sultanik, Lansdale, for appellant.

Charles L. Herring, Montgomeryville, for appellee.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Norristown Area School District (District) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) which affirmed an arbitration award decision reinstating Sherikia Bailey (Grievant) to her former position as a custodian. We affirm.

Grievant, a member of the Norristown Support Personnel Association (Association), a labor organization under the Public Employe Relations Act, commonly known as Act 195,[1] worked as a custodian with the District. The District is a party to a collective bargaining agreement (CBA) with the Association which provided for a grievance procedure with final and binding arbitration. Grievant was terminated from her position after she took photographs of several of her co-workers without their permission and used a tape recorder to record her conversations with them. Because she tape recorded conversations without permission, Grievant was charged with felony illegal wiretapping. However, Grievant later pled guilty to the a lesser charge of disorderly conduct. On May 19, 2000, the Association grieved Grievant's termination and the parties agreed to waive a hearing before the Board of School Directors and proceed directly to arbitration. On June 4, 2001, grievance arbitration commenced before the Arbitrator.

The question before the Arbitrator was: "Did the District act with just cause when it discharged the Grievant, Sherikia Bailey? If not, what shall the remedy be?" On October 31, 2002, the Arbitrator issued a decision finding that, although Grievant's actions in tape recording her fellow employees merits serious discipline, termination was too harsh a penalty because the

wiretap charges against her were dropped. Additionally, the Arbitrator noted that the wiretap law was enacted for reasons other than to protect a disgruntled employee from surreptitiously recording the comments of coworkers and that therefore Grievant's actions cannot be given the same significance of illegally wiretapping someone's home. The Arbitrator also noted that the record indicates that the District knew that Grievant made audiotapes of her conversations with other employees in the past but the District did nothing to discipline her for that conduct. Accordingly, the Arbitrator ordered Grievant reinstated to her position from the date the wiretap charges were dropped and also ordered that she receive back pay from that date. The District appealed to the trial court which, by order dated September 3, 2003, affirmed the decision of the Arbitrator. The District's appeal to this Court followed. On November 7, 2003, the trial court issued an opinion in support of its decision in which it stated that "the arbitrator's award drew its essence from the collective bargaining agreement [CBA] because the award is not inconsistent with the terms of the agreement." (trial court opinion, p. 8).

On appeal, the District argues that the Arbitrator's decision fails to draw its essence from the CBA and therefore fails the "essence test" because: 1) the District rather than the Arbitrator had the discretion to select the appropriate discipline for Grievant because the Arbitrator found that there was just cause for discipline, 2) the Arbitrator's award essentially condones criminal behavior of sufficient severity to subject an employee to immediate termination, 3) the Arbitrator's award is inter-

1. The Public Employe Relations Act (Act 195), Act of July 23, 1970 P.L. 563, *as amended,* 43 P.S. §§ 1101.101—1101.2301.

nally inconsistent because it orders the Grievant suspended from a particular date until "the date on which the wiretap charges against her were dropped", which is an event that has not occurred.

■ Our Supreme Court has emphasized that arbitration of labor disputes is final and binding and is mandated by the Legislature, thereby requiring a court reviewing an arbitrator's award to accede "great deference" to it. The arbitrator's award is, therefore, final and binding with only one exception, that is, except for an award that does not draw its essence from the collective bargaining agreement. The exception is referred to more often than the rule and is called "the essence test." This standard of review requires a two-pronged analysis.

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA )* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999).

■ We proceed, therefore, to first determine whether the issue as properly defined is within the terms of the CBA. We note that the District misses the issue that

was before the Arbitrator here in questioning whether the Arbitrator had just cause to modify the *discipline* imposed upon Grievant because only the District was empowered to discipline Grievant under the terms of the CBA. The issue before the Arbitrator was "Did the District act with just cause when it *discharged* the Grievant, Sherikia Bailey? If not, what shall the remedy be?" (emphasis added).[2] The issue was not whether the District had just cause to *discipline* Grievant. The District argues that the Arbitrator's award fails the "essence test" because the District, not the Arbitrator, has the sole discretion to determine the appropriate discipline of a grievant.

The CBA provides, in relevant part, that:

**ARTICLE XI: JUST CAUSE**
DISCIPLINE AND DISCHARGE

A. No employee shall be suspended, disciplined, formally reprimanded, reduced in rank or compensation, or deprived of any employment advantage without just cause. *Any such action taken by the Board or any supervisor, principal, or other administrator of the District shall be subject to the grievance procedure herein set forth.* All information forming the basis for the disciplinary action will be made available to the employee and the Association upon request.

B. The employer shall have the right to discipline or discharge any employee for violation of this Agreement, for substandard work performance or for just cause.

. . .

The employer shall have the right to suspend or discharge any employee im-

---

**2.** It is noted that the same issue, almost verbatim, was framed for the arbitrator in *Council 13, York County, County of Bedford* and

*Philadelphia Housing Authority* discussed *infra.*

mediately for offenses of a serious nature, among which shall be the following:

1. Any proven immoral charge.

2. **Proven theft or *conviction* of a felony.**

3. Punching someone else's time car or falsifying time sheets.

4. Physical assault to student, c-workers, or administrative personnel (unprovoked).

5. Drinking during working hours or being under the influence of liquor and/or non-prescribed drugs during working hours.

6. Leaving the work place without permission from the supervisor.

(emphasis added).

In *Office of the Attorney General v. Council 13, American Federation of State, County and Municipal Employees,* AFL–CIO, —— Pa. ——, 844 A.2d 1217 (2004), the parties stipulated to the same question to be determined by the arbitrator in the instant case, that is, was there just cause for discharge and, if not, what shall the remedy be. The Supreme Court reasoned:

> Based upon the clear terms of the collective bargaining agreement which prohibit termination without just cause and a grievance and arbitration procedure for settling disputes arising under the contract, it is beyond cavil that the issue submitted to arbitration, as properly defined, was encompassed within the terms of the collective bargaining agreement. Thus, we find that the first prong of the essence test is satisfied.

*Id.,* at 1224. Because the CBA states that no employee shall be discharged without just cause and that the employer has the right to discharge for just cause, the issue as defined for arbitration is clearly within the terms of the CBA. *Council 13.*

Next, we must determine if the Arbitrator's award can be rationally derived from the CBA. In *Council 13,* an employee of the Office of Attorney General was specifically found by the arbitrator to have committed unbecoming conduct, use of alcohol while off-duty and operation of an official vehicle while off-duty and while using alcohol. The arbitrator then found that although the employee committed the misconduct alleged, there was not just cause for termination because of three mitigating circumstances: the employee's long service with the employer, his subsequent rehabilitation and employer's imposition of dissimilar discipline under similar circumstances. In reversing the Commonwealth Court, the Supreme Court rejected this Court's conclusion that once the arbitrator found that the employee had committed the conduct alleged, just cause for discharge was established and the arbitrator did not have the authority to modify the discipline.[3] Noting that "just cause" was not defined by the parties, our Supreme Court held that the parties intended for the arbitrator to interpret the term "just cause" and to determine whether there was just cause for discharge. "[I]t was entirely rational for the arbitrator to interpret the undefined just cause provision as permitting consideration of mitigating circumstances such as disciplinary actions taken against other similarly situated employees and [the employee's] substance abuse rehabilitation, and to conclude that [the employee] was not discharged for just cause." *Id.,* at

---

**3.** In *Council 13,* the Supreme Court noted that this Court relied upon *Township of Penn v. American Federation of State, County and Municipal Employees, AFL–CIO,* 713 A.2d 1218 (Pa.Cmwlth.1998) in support of its decision. As the Supreme Court reversed the decision of this Court in *Council 13,* we believe that the Supreme Court has also impliedly reversed our decision in *Township of Penn.*

1225.[4]

Moreover, there are several Commonwealth Court cases since the *Cheyney University* decision where this Court has also held that the Arbitrator's award met the "essence test" even though the arbitrator vacated the discharge by an employer but imposed a lesser form of discipline.

In *York County Transportation Authority v. Teamsters Local Union # 430*, 746 A.2d 1208 (Pa.Cmwlth.2000), the grievant failed to report for his scheduled shift, which was a violation of the employer's Shop Rules. This was the grievant's sixth "miss-out" and, pursuant to the Shop Rules and the CBA, employer was entitled to and did terminate his employment. The discharge was challenged by the filing of a grievance. The arbitrator determined that the employer did have just cause to discipline the grievant but, due to mitigating facts and circumstances, the discipline of discharge was too severe a penalty and ordered that the grievant be reinstated. The employer appealed to the trial court, which affirmed the decision of the arbitrator. On appeal to this Court, we cited *Cheyney University* when we upheld the award and rejected the employer's argument similar to that in the instant case that once the arbitrator found that the employer had just cause to discipline the grievant, he was without the authority to modify the type of discipline that the employer decided to impose.

In *County of Bedford v. Pennsylvania Social Services Union*, 814 A.2d 866 (Pa. Cmwlth.2003), the employee worked at the county jail and was terminated for bringing a *Playgirl* magazine to work because Section 5903(a)(7) of the Crimes Code prohibits bringing obscene material into a correctional facility. The Arbitrator determined that there was no just cause for the discharge but because of mitigating factors the discipline should be reduced, such as, her conduct was not willful, the police were never notified of grievant's conduct, she was never charged with violating Section 5903(a)(7) of the Crimes Code and there was no indication that the magazine was viewed by any inmates or co-workers. The arbitrator's award finding no just cause for discharge, considering these mitigating factors and modifying the discipline to a 30–day suspension, was held to be rationally derived from the CBA.

In *Greene County v. District 2, United Mine Workers of America*, 778 A.2d 1259, 1262 (Pa.Cmwlth.2001), the trial court vacated the award of the arbitrator because it was manifestly unreasonable for the arbitrator to consider mitigating factors when a Children and Youth Services worker failed to maintain accurate and complete records. In reversing the trial court, this Court stated that: "When a collective bargaining agreement does not explicitly define just cause, the arbitrator may give meaning to the phrase." We also noted that the Supreme Court of Pennsylvania has criticized prior court decisions "for applying variations of the essence test in reviewing the arbitrator's decision and presumably has *retreated from its prior stance limiting an arbitrator's authority to overturn the discipline meted out by public employers* against employees who threaten their ability to perform their public duty." *Id.* at 1263–1264 (emphasis added). As such, in *Greene County* we held that "[b]ecause the issue in this case, whether [the employer] had just cause to discharge [the grievant] falls within the terms of the CBA, and because the arbitrator's interpretation of just cause as its

---

4. The Supreme Court specifically noted that the arbitrator did not find just cause for termination in his award, but rather that the

employee engaged in the misconduct alleged which was distinguishable from a finding of just cause for discharge. *Id.*, at 1223 n. 7.

application in this case can rationally be derived from the terms of the agreement, affirmance of the trial court is not warranted even though we believe that the arbitrator's decision, though rational, is incorrect." *Id.*

The case of *Philadelphia Housing Authority v. Fraternal Order of Housing Police*, 811 A.2d 625 (Pa.Cmwlth.2002), is also instructive. In *Philadelphia Housing Authority*, the employer again contended that the arbitrator was limited to determining only whether there was just cause for disciplining the employee and, once he determined that the employee could be disciplined, he was without the authority to revise the discipline chosen by the employer. This Court rejected the employer's argument and upheld the award reducing a discharge to a suspension.

The District's argument that, pursuant to *York County*, the Arbitrator did not have the power to modify the discipline imposed upon Grievant is misplaced. In *York County*, this Court specifically held that the arbitrator had the power to so modify.

In this case, the District issued a "Statement of Charges" against Grievant which informed her, in relevant part, that "Article XI, C2 [of the CBA] also provides for the right to suspend or discharge any employee as the result of a *commission* of a felony." (emphasis added). The School Board, relying on this Statement of Charges, issued a Resolution which discharged Grievant. We first note that Article XI C2 of the CBA provides that: "The employer shall have the right to suspend or discharge any employee immediately for offenses of a serious nature, among which shall be the following ... 2. Proven theft or *conviction* of a felony." The District apparently did not understand the distinction between *commission* of a felony and *conviction* of a felony. The issue defined

for the arbitrator basically was whether or not the grievant had been convicted of a felony, the specified cause for discharge set forth in the CBA, or whether there was other misconduct amounting to just cause for discharge.

The Arbitrator in this case found that Grievant did not violate this provision of the CBA because, although she was charged with a felony, the felony charges were dropped and she was never convicted of a felony. Although in *Council 13* there was no attempt made to define just cause in the CBA as there was here, once the District failed to prove any of the listed causes for discharge, the Arbitrator properly vacated the discharge. Since there was lesser misconduct proven in this case, however, the Arbitrator was empowered by the defined issue to determine whether it was just cause for discharge and, not finding any, what shall the remedy be. His decision was clearly rationally derived from the CBA. As such, the second prong of the essence test was met. There is no essence test exception, therefore, to the general rule that the award of an arbitrator must be given very great deference and is final and binding.

Next, the District argues that the Arbitrator's award fails the "essence test" because it essentially condones criminal behavior of sufficient severity to subject an employee to immediate termination. We disagree. As noted above, the CBA provides that an employee may be suspended or discharged upon "proven theft or *conviction* of a felony." (emphasis added). Although Grievant was charged with felony wiretapping, Grievant was not *convicted* of this offense. Rather, Grievant pled guilty to a lesser charge, which is not a felony. Thus, because Grievant was not convicted of a felony and the Arbitrator did not find other just cause for discharge, we fail to

see how the Arbitrator's award fails the "essence test".

Finally, the District argues that the Arbitrator's award is internally inconsistent because it orders the Grievant suspended from a particular date until "the date on which the wiretap charges against her were dropped", which is an event that has not occurred. Specifically, the District argues that the wiretapping charges were never "dropped" but, rather, Grievant entered into a plea agreement in which the wiretap charges would be reduced to a misdemeanor disorderly conduct charge. Regardless of the technicalities of whether the charges were "dropped" or whether Grievant pled guilty to a lesser charge, it is clear that the Arbitrator's interpretation was rationally derived from the CBA in that, although Grievant was charged with a felony, she was never prosecuted for that crime, has never been convicted of that crime and, because of the plea agreement, will not be subject to any future prosecution for felony wiretapping. As such, we fail to see how the Arbitrator's award was inconsistent but, even if it were, the standard is not whether the award was reasonable but only whether it was rationally derived from the CBA, which it was. *Cheyney University.*

Accordingly, the order of the trial court is affirmed.

Judge FRIEDMAN concurs in the result only.

### ORDER

AND NOW, April 26, 2004, the order of the Court of Common Pleas of Montgomery County docketed at 02–25939 and dated September 3, 2003 is hereby AFFIRMED.